477 So.2d 896 (1985)
Brian ARCH
v.
The GREAT ATLANTIC AND PACIFIC TEA COMPANY, INC.
No. CA-3184.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1985.
*897 Robert E. Petyon, Liane C. King, Christovich & Kearney, New Orleans, for defendant-appellant.
Stephen P. Bruno, Bruno & Bruno, New Orleans, for plaintiff-appellee.
Before REDMANN, C.J., and CIACCIO and LOBRANO, JJ.
CIACCIO, Judge.
Plaintiff filed this action to recover damages for injuries he sustained when, as a customer in the defendant's grocery store, he tripped and fell over a box that was adjacent to an aisle in the store. The trial court awarded the plaintiff general damages of $30,000 but reduced this amount by 75%, this being the amount assessed for the plaintiff's contributory negligence. Defendant appeals the judgment of the trial court and plaintiff answers the appeal. Both parties question the trial court's findings on the issue of liability. We amend the judgment of the trial court and as amended the judgment is affirmed.
The sole issue for consideration is the degree of negligence of the defendant and plaintiff. Quantum is not raised as an issue on appeal.
The facts surrounding this accident are in conflict:
The plaintiff, Brian Arch, testified that on the evening of March 11, 1982,[1] at approximately 8:30 p.m., he was shopping for groceries in The Great Atlantic and Pacific Tea Company (hereafter referred to as "A & P" Grocery) located on Royal Street in New Orleans. Plaintiff had shopped at this location on previous occasions. He stated that on this date he had gone to the back of the store where he obtained a container of milk. Although plaintiff did not have a shopping cart he pick up a bag of cat litter and "a few items" of groceries, all of which he carried in his arms. Before proceeding to the check out counter, plaintiff went to Aisle 7 in order to get a container of cereal. He was looking at the shelf for the cereal when his foot "hooked unto a box that was protruding out from the shelf."
He stated that he did not see the box until he tripped over it, because he was looking at the shelf. Arch fell backwards striking his back on the shelf on Aisle 7 which contained soft drinks. Plaintiff also observed the box from his vantage point on the floor. At this time, he observed that the box was ¾ of the way out onto the floor and one corner of the box was under the shelf.
Arch further testified that he initially blacked out after the fall but upon awakening he found a security guard positioned over him. He told the guard that his back hurt and plaintiff was assisted in turning over on his stomach. The guard loosened plaintiff's belt and told the plaintiff he observed the physical injuries of scratches and bruises. He instructed the plaintiff not to move and the guard thereafter summoned the store's co-manager. The local police ambulance was called and it took the plaintiff to the hospital for treatment.
*898 Francis Landrieu, a co-manager at the A & P Grocery, had been on duty the night this incident occurred. He testified that he had been engaged in preparing for inventory shortly before this accident. He stated that he was working on Aisle 7 in the cereal section, near the front of the store. In order to prepare for inventory all the stock had to be placed on the shelves and marked. He stated that in this store merchandise is stored underneath the shelves in boxes. He further stated that customers will often reach into boxes underneath the shelves in order to retrieve grocery items because customers often think these products are fresher. Landrieu had just finished straightening the cereal section of the aisle and nothing was out of place on Aisle 7. According to Landrieu, there were no boxes in the aisle that were not located under a shelf and there were no objects protruding in the aisle. He testified that he left this section in order to go to the area of the front of the store where the registers were located, so that he could make change. He was gone for approximately 5 minutes when he was notified that the plaintiff was hurt and lying on the floor in Aisle 7. Landrieu returned to Aisle 7 and found the plaintiff on the floor. Landrieu asked what had happened and he was told by the plaintiff that he had fallen over a box, but that he did not need the assistance of a doctor. At the time, Landrieu observed a box of canned goods protruding about 2 inches from beneath the shelf. The box, measuring approximately 18 x 24 inches was squared to the shelf. Landrieu shoved the box under the shelf with his foot. There were no other objects on the aisle and no customers were observed as being on this aisle. Landrieu was the first store employee to arrive at the scene and as far as he could ascertain there were no eye witnesses to the accident. He stated that he did not see any groceries on the floor in the area and that the plaintiff was positioned about 4-½ feet into the aisle. Landrieu testified that Arch had no visible bruises and that he left, with a companion, on his own power. He did not observe an ambulance, which according to plaintiff, had come to transport him. After plaintiff's departure, an accident report was prepared by the store's personnel.
Roy Johnson, an assistant manager at the A & P Grocery, testified that he had been preparing for inventory just before this incident occurred. He stated that he was working on Aisle 7 near the soft drink area (which was the end of the aisle opposite that at which the cereal was located). He testified that Mr. Landrieu was working on Aisle 7 at the other end. During Johnson's preparation for inventory he was required to reach under the grocery shelves to collect the merchandise to be placed on the shelves. According to Johnson, when he left Aisle 7 prior to the accident, there were no boxes protruding from under the shelves in that aisle nor were there any boxes in the middle of the aisle.
Some 3 to 4 minutes after leaving Aisle 7, Mr. Johnson was advised, by a customer, that the plaintiff had fallen. When Johnson went to Arch's aid he did not remember seeing any protruding boxes nor did he see debris on the aisle floor. According to Johnson, due to safety standard requirements, boxes are not to be left protruding in the aisle. However, Johnson conceded that he had on occasion seen boxes which were protruding from 1 to 1-½ inches from under the shelves. After the plaintiff's fall, this witness did not remember anyone mentioning to him that there was a box protruding from under a shelf when the plaintiff fell. He did not remember seeing the security guard in this area after plaintiff's fall nor did he think anyone had called an ambulance.
The store manager, Donald Boushie, Sr., testified that Johnson and Landrieu had, as one of their duties, the stocking of the grocery shelves. He stated that grocery cartons are not left on the sales floor nor protruding onto the floor area.
He stated that boxes are placed underneath the cereal shelf and remain there daily. On this date he did not know the number of boxes which were under the shelves in the area when plaintiff fell. He did state that it was not normal for a case *899 of groceries to be protruding into the aisle. Boushie did not know why Arch had fallen as Bouchie had been told that there was nothing on the floor.
The duty of care required of store owners for the protection of their customers in such cases as this is set forth in Gonzales v. Winn Dixie Louisiana, Inc. 326 So.2d 486 at 488 (La., 1976).
The duty of a store owner to protect his customers from foreign substances on the floor is one of reasonable care under the circumstances. Reasonable protective measures, including periodic inspections, must be taken to keep the aisles and floors free of substances or objects that may cause customers to fall. Kavlich v. Kramer, La., 315 So.2d 282 (1975); Tripkovich v. Winn-Dixie of Louisiana, Inc., La.App. 284 So.2d 80 (1973); Fontanille v. Winn-Dixie Louisiana, Inc. La.App. 260 So.2d 71 (1972), cert. denied, 261 La. 1064, 262 So.2d 44 (1972); Proser, Law of Torts, Sec. 61, pp. 392-392 (4th ed. 1971). The circumstances that determine the reasonableness of protective measures include the type and volume of merchandise, the type of display, the floor space utilized for customer service, the nature of customer service, and the volume of business. As we recently noted, the self-service grocery system requires customers to focus their attention on the shelves and to handle merchandise. The system increases the risk of harm from objects dropped on the floor by customers and, correspondingly, the duty to minimize the risk by frequent inspections and cleanups. See Kavlich v. Kramer, supra; Prosser, Law of Torts, Sec. 56 p. 349 (4th ed. 1971).
Once it is established that a foreign object was on the store's floor which has caused the plaintiff to fall, the burden shifts to the defendant store owner to exculpate himself from negligence by proving that he has fulfilled his twofold duty to discover and correct dangerous conditions reasonably anticipated in its business activities. Brown v. Winn Dixie Louisiana, Inc., 452 So.2d 685 (La., 1984) citing Gonzales v. Winn Dixie Louisiana, Inc., supra and Kavlich v. Kramer, supra.
Defendant contends that the trial court erred in finding the store negligent in that the store had exculpated itself from liability by showing that their employees knew of no hazard and that reasonable steps to discover and correct any hazard had been taken as employees had left the accident site some 3-5 minutes earlier, and there were no protruding boxes on the aisle at the time.
In this case the plaintiff testified that there was a box protruding into the aisle and the box was the cause of his fall. Plaintiff established a presumption of the defendant's negligence and shifted the burden to the defendant to exculpate itself.
Francis Landrieu testified that all the boxes were under shelves when he left the aisle five minutes before the accident. He admitted observing a box protruding two inches into the aisle when he returned to the accident site to render assistance to the plaintiff. Roy Johnson corrobated Landrieu's testimony that there were no protruding boxes on this aisle when he left 3-4 minutes before. However, Johnson did not recall seeing a box protruding on Aisle 7 when he returned after the plaintiff's fall.
Apparently the trial judge, faced with a conflict in the testimony, chose to believe the plaintiff and to disbelieve the testimony of the defendant's employees regarding the existence of a protruding box prior to the accident. We cannot say that such a finding is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978). Since the court apparently found that a hazard existed and the defendant's employees were in the area some 3 to 5 minutes before plaintiff's fall but failed to discover and correct the hazard, the trial court correctly concluded that defendant was negligent. Accordingly, the defendant has failed to exculpate itself from the presumption of negligence cast upon it by the plaintiff's testimony.
Plaintiff contends that the trial court erred in finding he was negligent and that *900 his own negligence contributed to his accident. In support of his position plaintiff argues that since he was in a self serve grocery he had no duty to discover low profile hazards.
Contributory negligence is a matter of fact to be determined in the light of the circumstances of each case. Soileau v. South Central Bell Telephone Co., 406 So.2d 182 (La., 1981). Questions of fact are generally left to the trier of fact and such findings will not be disturbed unless clearly wrong. Arceneaux v. Domingue, supra.
The record indicates that although plaintiff was a customer in a self serve grocery, he had frequented this store on more than one occasion. On this date he had grocery items in his arms and had traversed the entire length of the aisle which contained the protruding box before he tripped and fell over this clearly discernable object. Under these circumstances we cannot say that the trial court was clearly wrong in finding that the plaintiff's actions contributed to his slip and fall in the defendant store.
However, we do find that the trial judge was clearly wrong in assessing plaintiff a percentage of negligence in the amount of 75%. Under the facts of the instant case we are of the opinion that the trial judge may have placed too heavy a burden of the plaintiff to see what he should have seen. Although he (plaintiff) bears some responsibility for keeping or maintaining a proper lookout, the fact that defendant's store is a self serve store with items stocked at eye level or above lessens the plaintiff's duty to keep a lookout. Under the circumstances of this case we find that the maximum percentage of negligence attributable to the plaintiff is 50%. Accordingly the defendant's percentage of negligence is increased to 50%.
For the reasons assigned the judgment of the district court is amended to assess the plaintiff with 50% negligence and to assess the defendant with 50% negligence, and as amended, the judgment is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] The exact date of the incident is in conflict. Plaintiff testified that it occurred on March 11, 1982 yet his petition states the incident occurred on March 16, 1982.