SCHOTT, Chief Judge.
This is a suit by Mr. and Mrs. Roy Waller, plaintiffs, against Dollar General Corporation, defendant, for damages resulting from Mrs. Waller’s fall in defendant’s store. The trial court awarded Mrs. Waller $12,000 in general damages and $275 in medical expenses, but attributed to her sixty percent of the fault for the accident thereby reducing her recovery to $4,800 plus the medical expenses. The Wallers have appealed claiming manifest error and abuse of discretion on the part of the trial court as to liability and quantum of damages.
Mrs. Waller was shopping in defendant’s store on January 22, 1985. After about twenty minutes she had her arms stretched out in front of her filled with items she intended to purchase. As she continued to shop, her foot became caught in a box on the floor and she fell down. Defendant’s employees were in the area of Mrs. Waller’s fall stocking the shelves and display tables from boxes resting on the floor. Mrs. Waller was aware that this was being done. Because of the items in her arms, she was unable to see the box she fell on.
*1348 Before addressing the issue of quantum, which is the more difficult problem in the case, we will consider plaintiffs’ claim that the trial court’s allocation of sixty percent of the fault is manifestly erroneous.
Among the factors which may influence the allocation of fault to a plaintiff in a comparative negligence case are 1) whether the conduct resulted from inadvertence or involved an awareness of danger and 2) how great a risk was created by the conduct. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). This case involved an awareness of danger on Mrs. Waller’s part because she knew there were boxes on the floor and she couldn’t see the one she fell over because she caused her own .vision to be obstructed. A great risk of tripping over a box was created by her own conduct. The allocation of the degree of fault under these circumstances is the function of the trier of fact. On the appellate level, we are unable to conclude that the court’s attribution of sixty percent of the fault to Mrs. Waller is manifestly erroneous.
Our conclusion is bolstered by Arch v. The Great Atlantic and Pacific Tea Company, 477 So.2d 896 (La.App. 4th Cir.1985). In this factually similar situation, the trial court allocated seventy-five percent of the fault to plaintiff. This court reduced the allocation to fifty percent on the basis that plaintiff had no knowledge of the presence of the boxes. Here Mrs. Waller knew about the boxes, but she failed to keep a proper lookout for them. Having resolved to affirm the trial court on the issue of liability, we turn to the issue of quantum.
Mrs. Waller sustained a back injury in the fall and was treated by a number of physicians until the eve of the trial when she had a discogram. She testified that she was well until the accident and has continually suffered since the accident with pains from the back injury and to the extent that her ability to work, participate in physical activities of all kinds, and care for her family has been seriously impaired. There was little evidence of objective medical findings among the many tests and examinations performed on her and, in the final analysis, there is no proof that she needed any surgery or further significant medical treatment by the time of the trial four years after the accident.
The trial judge did not assign reasons for judgment. Consequently, we must resort to some speculation as to how the court assessed general damages at $12,000 and medical expenses at $275. Since Mrs. Waller incurred almost $9,000 in medical expenses by trial time, it is clear that the trial judge concluded that she recovered from the injury attributed to the fall at some point long before the trial. In other words, her complaints of pain and problems subsequent to the point when the judge cut them off were rejected either on a credibility basis or on the basis that she failed to prove causation. We have concluded that such a finding is manifestly erroneous.
After the January 22, 1985, accident, Mrs. Waller saw Dr. Robert J. Barnes, a general practitioner. He diagnosed a mild lumbar strain and treated her conservatively over the next few weeks. When her complaints persisted he recommended diagnostic tests at a nearby private hospital, but she was unable to afford this expense. Over the next several months she went to Charity Hospital for outpatient treatments for her back problem, and she saw two different chiropractors on several occasions.
In May and June, 1986, plaintiff saw Dr. Wilmot Ploger, an orthopedic surgeon. He thought 1) her complaints of radiating right leg pain emanating from the low back upon standing and stooping were consistent with lumbar disc injury; 2) such pain was the result of the January, 1985 injury; and 3) if her complaints of pain persisted she should have hospitalization for diagnostic studies. However, there were no objective findings to substantiate her subjective complaints.
Mrs. Waller went to Dr. Bernard Manale, an orthopedic surgeon, in May 1987. He *1349 too thought her complaints of pain were compatible with lumbar strain and possible nerve root involvement. He ordered a CT scan which he interpreted to show protruding discs, and he referred her to another orthopedist, Dr. George Cary, for consideration of a percutaneous suction discectomy.
Dr. Cary’s interpretation of the previous CT scan was similar to Dr. Manale’s, but its indication of a bulge on the left side of the disc was inconsistent with plaintiff’s complaint of pain in her right leg. After she came to his office several times in late December, 1987, she did not return until June, 1988. At this time Dr. Cary ordered a myelogram, another CT scan, and an MRI. All of these were negative except that the CT scan showed a minor bulge of the disc at L5-S1 which Dr. Cary thought was not significant. These tests ruled out a herniated disc, they led him to decide against a discectomy, and they left him without any explanation from an objective standpoint for the persistence of discomfort in her lower back. He recommended conservative treatment and felt there was nothing he could do as an orthopedic surgeon to help her.
In September, 1988, Mrs. Waller returned to Dr. Manale. In his examination he found spasms and he ordered an EMG which proved negative. He continued to see her in 1988 and referred her back to Dr. Charles Aprill, a radiologist, who had done the MRI on her in June, 1988 at Dr. Cary’s request. This time, in November, Dr. Aprill performed posterior joint injections on her. As a result of his report to Dr. Manale, the latter reached the conclusion that a discogram was warranted.
The discogram became a major issue in the trial court because on January 24, 1989, a week before trial, plaintiffs moved to continue the case in order to have the disco-gram performed on January 30 and a report placed into evidence. Defendant moved to exclude all evidence concerning the discogram because it would not be performed until the eve of the trial thereby precluding defendant from the opportunity to defend against it. The trial judge denied plaintiffs’ motion for continuance and granted defendant’s motion to exclude the discogram evidence. Thus, all testimony by Drs. Manale and Aprill concerning the proposed discogram and, ultimately, the report of the discogram, are in the record by proffer.
We have concluded that all of this testimony and the report should be considered on appeal. First, Mrs. Waller’s problems were persistent and ongoing. She had been Dr. Manale’s patient since May, 1987, and he was at all times convinced that she had a disc problem which would require surgery. When he recommended the discogram he was sure that this procedure would finally prove the need for surgery. Since the discogram was a logical step in Dr. Manale’s long process of trying to determine what Mrs. Waller’s problem was, it was highly appropriate for the trial court to have the benefit of the evidence. Second, this report is dated January 31 and the trial was concluded on February 1. The case wasn’t decided until May 26. If defendant thought the evidence and report were prejudicial to its case, it had ample opportunity to request that the trial be reopened for further evidence. The interests of justice militate in favor of the admissibility of the evidence in the trial court and lead us to consider this proffered evidence on appeal.
Having reviewed the report, we find that it fails to establish that Mrs. Waller is in need of surgery or that she has any significant disability from the accident. The report simply concludes that the L4-L5 disc is normal and the L5-S1 disc “must be considered a primary pain generator related to this chronic low back syndrome”. Dr. Aprill, who rendered this report, had testified without equivocation that the only practical function of a discogram is to establish the need for surgery. His report does not suggest that surgery is warranted. It only repeats what had been suspected all along that the focus of Mrs. Waller’s pain is on the disc at L5-S1. There re *1350 mains nothing in the record to prove that she has a herniated disc and there is no proof of a permanent disability or even the need for future surgery.
Appellants contend that the trial judge committed reversible error by refusing to allow Mrs. Waller to testify about what her doctors were telling her. Contrary to appellants’ assertions, Waller was allowed to testify without sustained objection on proffer. This assignment has no merit.
We have concluded that the trial court committed manifest error by apparently cutting off Mrs. Waller’s medical expenses and her pain and suffering with her last visit to Dr. Ploger in June, 1986. While there is an absence of objective findings by the physicians except for the spasms found by Dr. Manale in September, 1988, a careful reading of the testimony of Drs. Manale and Cary leads to the conclusion that they were convinced that her complaints were genuine. We note that there are gaps in her visits to these physicians, such as between June, 1986 (Ploger) and May, 1987 (Manale) and between December, 1987 and June, 1988 when she was seeing Dr. Cary, but we are unable to conclude that this plaintiff was a malingerer or imposter trying to build a case as she subjected herself to years of medical examinations, tests and studies down to the date of the trial. The record supports the conclusion that more probably than not she continued to experience pain and suffering until the date of the trial four years after her accident, and, that she was entitled to seek medical treatment. Dr. Manale testified that all of this was the result of the accident. We conclude that the record supports recovery for all the medical expenses she incurred until the date of the trial which appear to be $8,900. In reaching this conclusion we are not unmindful of the testimony of Dr. G. Gernon Brown, orthopedic surgeon, to the effect that she was asymptomatic and able to work in August, 1985 when he saw her. But we are convinced that the trial judge himself did not base his judgment on Dr. Brown’s opinion and to this extent we defer to the trial court’s opinion. When Dr. Brown’s evaluation of August, 1985 is compared to the much later evaluations óf Drs. Ploger, Ma-nale, and Cary, we are inclined to assign more weight to the opinions of the latter physicians.
In the light of the foregoing, the trial court’s assessment of general damages at $12,000 is a clear abuse of discretion. While there is no proof of permanent disability or the need for future surgery, there is proof of four years of pain and suffering. The least amount within the trial court’s discretion for such prolonged suffering is $25,000.
The trial court’s failure to award any amount for lost earnings was likewise manifestly erroneous. The record shows that she had had a baby in December, 1984 and had no plans to return to work until February, 1985. It shows further that she had a hysterectomy in March, 1985 and returned to work in August, 1985 through June, 1986. At this time Dr. Ploger found that she was able to work. Not until June, 1987 when Dr. Manale declared her to be disabled is there evidence that she was unable to work because of the accident. Consequently, she established loss of earnings as a school employee from August, 1987 until June, 1988, and from August, 1988 until the date of the trial. She established that her salary as a school bus driver and cafeteria worker was $879 per month. This translates into $14,064 for sixteen months. Since there is no proof of permanent disability, she is not entitled to recover for loss of future earnings.
We are not persuaded that the trial court erred in dismissing Mr. Waller’s claim for loss of consortium and services.
We conclude that Mrs. Waller established the following damages:
Medical expenses $ 8,900.00
Lost earnings 14,064.00
General Damages 25,000.00
Total $47,964.00
*1351 We reduce this amount by her sixty percent of the fault and conclude that she is entitled to recover $19,185.60.
Accordingly the judgment appealed from is affirmed, but amended so that there is judgment in favor of plaintiff, Mrs. Sandra Bible Waller, and against defendant, Dollar General Stores, in the sum of $19,185.60 with interest from date of judicial demand until paid and all costs.
AFFIRMED AS AMENDED.