463 So.2d 616 (1984)
Mrs. Eunice W. BLANCHARD
v.
SCHWEGMANN GIANT SUPER MARKETS, INC.
No. CA-1903.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1984.
Rehearing Denied February 26, 1985.
*617 Edwin R. Fleischmann, Jr., New Orleans, for plaintiff-appellee.
William G. Tabb, III, Frederick A. Miller, New Orleans, for defendant-appellant.
Before WILLIAMS and BYRNES, JJ., and L. JULIAN SAMUEL, Judge pro tempore.
L. JULIAN SAMUEL, Judge Pro Tempore.
Defendant suspensively appeals a judgment awarding plaintiff $8,000.00 in general damages and $2,803.75 in medical expenses for injuries she sustained when she slipped and fell in defendant's super market.
On February 1, 1981 at approximately 10:00 a.m., plaintiff and her husband were grocery shopping at Schwegmann's on Judge Perez Drive. Upon finding no shrimp in the seafood case, plaintiff started toward the frozen vegetables. Allegedly due to the wet condition of the floor, plaintiff's feet went out from under her. She fell, grabbing the grocery cart, pulling it on top of her and hitting her head on the seafood case. She suffered a fracture of the 8th rib, multiple contusions, and a lumbosacral sprain.
Our established jurisprudence is that once a customer proves that a foreign substance was on the floor and that the substance caused her to slip, fall and sustain injuries, a presumption of negligence *618 arises on the part of the defendant storeowner. The burden of proof then shifts to the storeowner to exculpate itself from the presumption by showing reasonable periodic clean-up and inspection procedures of the floor area in order that a foreign substance does not remain for an unreasonable length of time on the floor. Gonzales v. Winn Dixie, Louisiana, Inc., 326 So.2d 486 (La. 1976). Also well settled are the principles that a reviewing court will not set aside a factual determination by the trial court absent manifest error, Canter v. Koehring, Co., 283 So.2d 716 (La.1973).
Defendant contends the trial judge erred in finding it negligent as it was established at trial that the area where plaintiff fell had been cleaned only minutes prior to the fall. It argues the evidence shows there was no water on the floor either prior to or after the accident when the area was inspected and swept to clean up only broken eggs. In the alternative, Schwegmann's argues it established reasonable and periodic inspection procedures which exculpate it from any negligence.
Plaintiff's husband, Edgar Blanchard, did not witness the fall but was notified of his wife's accident over the store's public address system. He testified that when he arrived on the scene he found her lying on her back with her head near the front of the seafood case. He stated: "She looked like she was dead." He said she was ice cold and the back of her clothing was wet. He also testified the floor in front of the counter and for the full length of the store was "very wet" with a "pinkish-whitish liquid".
Plaintiff stated she had been in the store approximately ten minutes before arriving at the seafood counter. She said the seafood case was completely empty and two Schwegmann employees were wiping it out. She testified she noticed water on the floor in front of the dairy case which was adjacent to the seafood case. She did not look at the floor in front of the seafood where she fell, but did recall while lying on the floor after the accident "I was freezing to death on my back ... my back was all wet."
Charles Springs, a former employee of Schwegmann's and seafood clerk at the time of the accident, testified he heard someone moan and turned to see plaintiff who appeared to be "passing out". He saw her grab a customer then her shopping cart, which she pulled over as she fell. He stated the seafood case was full and was not down for repairs that morning. He had no recollection of accumulated water on the floor at the time of the accident, but did recall that the porterette had cleaned that area in front of the seafood case a "couple of minutes" prior to Mrs. Blanchard's accident. He testified that after the fall the only substance on the floor was broken eggs, no water. On cross-examination, Springs testified chicken necks were cased in the same location as the seafood and admitted that from time to time chicken and milk drippings were in the area which needed to be cleaned periodically.
Theresa Cabiran, the porterette assigned to the area in question on the day of the accident, also testified at trial. She had no independent recollection of her work activities that day, but testified from the work chart she had filled out on the day of the accident, February 1, 1981. She stated it was her job to keep the floors clean and free of debris in the area designated to her, and that when she would sweep, mop or inspect a particular area, she would write the time, place and work activity on the chart. However, she admitted that on occasion she would work for a time in several different areas before filling out the chart. She further stated that "S" for swept implied the substance on the floor was dry and "M" for mopped would mean the floor was wet. The chart indicates, and Ms. Cabiran so testified, that she swept the seafood area at 10:06 a.m. At 10:08 she swept the dairy area and at 10:09 she swept near "door 2", adjacent to the dairy area.
On direct examination, the porterette was asked when was the next time she was in the seafood section. Referring to the *619 chart she answered at 10:29 a.m. to clean up the eggs which were "almost next to the woman." The chart indicates the seafood area was "swept" at that time and Ms. Cabiran testified this was when she "swept" up the eggs after the accident. She also said there was no water on the floor at that time. For some reason, Ms. Cabiran chose to ignore the entry on the chart "10:20SeafoodeggsM," which would seem to indicate that eggs were mopped up in the seafood section at 10:20. On cross-examination, plaintiff's attorney attempted to clarify this omission, but Ms. Cabiran said she could not remember whether the 10:20 activity was before or after the accident and stuck to her original story that the eggs were "swept" up in the seafood area at 10:29 a.m. after the accident. She also testified that prior to this (at 10:27 a.m., two minutes earlier) she had been in the dairy section to mop. She testified it was at this time, while mopping the dairy section that she heard of Mrs. Blanchard's accident. She stated she was told to find a blanket to cover Mrs. Blanchard. She said it took her five to ten minutes to get a blanket.
Ms. Cabiran's testimony was simply not believable. For some reason, she attempted to divert attention from the 10:20 mopping in seafood. She said she was in dairy (directly adjacent to seafood) mopping two minutes before the accident (10:27). On the basis of this evidence defendant asserts, since the area was mopped less than two minutes before, this proves the area was not only not wet but had been inspected a very short time before the plaintiff's fall. The porterette also said she was sweeping up the eggs at 10:29 after the accident, but had spent five to ten minutes looking for a blanket to cover Mrs. Blanchard. Ms. Cabiran's testimony and the entries on the chart simply cannot be reconciled. Cabiran also admitted under crossexamination that water and drippings built up rapidly in the milk and seafood areas.
The trial judge had the opportunity to observe first hand testimony and demeanor of all the witnesses. We cannot say that he erred in not relying on the testimony of defendant's witnesses and in accepting that of the plaintiff's that the floor was wet. By Cabiran's own admission, the charts were unreliable since she would often work areas and then some time later fill out the time sheet. The testimony of defendant's witnesses was inconsistent, sometimes unbelievable, and simply not sufficient to rebut the presumption of negligence attributed to defendant.
Nor can we say that the trial court erred in concluding that the clean-up procedures utilized by defendant were not adequate to exculpate it from liability. Maryland v. Winn-Dixie, Louisiana, Inc., 393 So.2d 316 (La.App. 1st Cir.1980). According to defendant's evidence, cleaning during the day was performed on an "as needed" basis. Porterettes were assigned to various "zones" or areas of the store for the purpose of performing these duties. Apparently, no regular inspections of the aisles were conducted. The porterettes would simply traverse their zones and clean up any spills they detected. Whenever a porterette cleaned a spill, she would note on a chart the time, place, and clean-up activity performed.
On the date of the accident in suit, Theresa Cabiran was the porterette assigned to the area in which plaintiff was injured. As we have said, she testified that she swept the seafood area at 10:06 a.m. When asked when she was next in the seafood section, she replied 10:29 a.m., after the accident, to clean up the eggs "almost next to the woman." Although an entry on Ms. Cabiran's chart indicates that she mopped in the seafood section at 10:20 a.m., she stated at trial that she did not remember whether this clean-up took place before or after the accident, and reiterated the fact that it was 10:29 a.m. when she returned to the seafood section to clean up after the accident. Obviously, the testimony with respect to defendant's clean-up procedures is inconsistent and contradictory.
The duty of a store owner to protect his customers from foreign substance on the floor is one of reasonable protective *620 measures under the circumstances. Gonzales v. Winn-Dixie, Louisiana, Inc., supra. The circumstances that determine the reasonableness of protective measures include the type and volume of merchandise, the type of display, the floor space utilized for customer service, the nature of customer service, and the volume of business. Brown v. Winn-Dixie, Louisiana, Inc., 452 So.2d 685 (La.1984); Gonzales v. Winn-Dixie, Louisiana, Inc., supra. In the present case, plaintiff's accident occurred in the seafood section of the store. The uncontradicted testimony of defendant's witnesses was that chicken and milk drippings built up so rapidly in this area that frequent clean-ups were necessary. Due to the unique nature of the refrigerated seafood section, and the increased hazard it poses for unsuspecting customers, it is clear that the defendant is obligated to inspect this area more regularly and frequently than say, a dry goods section where water and drippings are not likely to occur. The defendant's burden is greater because the risk of harm in this area is greater.
Under the facts of the present case, it appears that no frequent or regular inspections were conducted. In fact, in this particular instance, there was a lapse of at least twenty minutes before the porterette returned to the seafood section to clean it up and she apparently returned at that time only because she had been alerted of the plaintiff's accident. This is not a case where the foreign substance was on the floor only minutes before the accident occurred. Maryland v. Winn-Dixie, Louisiana, Inc., supra. Here, the lack of frequent inspections and other preventive measures resulted in the failure to discover a dangerous condition and contributed substantially to the causation of the ensuing fall and injury. Given these facts, we conclude that the trial judge did not err in finding the defendant's clean-up procedures were inadequate to relieve it of liability.
In addition, we note the judge could have found liability if he believed, as he reasonably could, that a mopping just a few minutes before the fall (at 10:20 a.m.) left a wet, and slippery walking surface in the seafood area.
This case involved credibility determinations by the fact finder and we find no manifest error or abuse of discretion in his conclusions.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.