CIACCIO, Judge.
Plaintiff, Gloria Sierra, filed suit to recover damages for injuries suffered when she slipped and fell on a broken bottle while shopping in the defendant’s store. The jury found the defendant solely liable for Ms. Sierra’s injuries and awarded her *152 damages of $15,500. Defendant appeals this judgment and we affirm.
On appeal the defendant contends the trial court erred in its findings on the issue of liability and the nature and amount of the damage award.
On May 2, 1979 Gloria Sierra, a twenty-nine year old mother of four, was shopping at Schwegmann Giant Supermarket located on Judge Perez Drive in Chalmette, Louisiana. At the time, Ms. Sierra was almost 7 months pregnant with her third child. She was accompanied by David Sierra, the man who later became her husband. Shortly before this accident, the couple had finished their grocery shopping and had proceeded to the check out line. Upon reaching the check-out line, they realized that they had failed to select a bottle of steak sauce. Since the line was long, Ms. Sierra decided to proceed, alone, to the aisle on which the steak sauce was located. She was looking for the sauce when she slipped and fell on a broken bottle of hot pepper sauce which was on the aisle floor adjacent to the shelf. She hit her back and the back of her head in the fall.
Shortly thereafter, David Sierra heard an announcement over the store’s speaker system that a pregnant woman had fallen in the store. He left the check out line and went to search for Gloria Sierra. He found her sitting on the floor in the aisle where the sauces are shelved. According to David Sierra, he also saw blood, glass, and a red substance on the floor.
The store’s security supervisor summoned an ambulance and the plaintiff was taken to the St. Bernard Medical Center where she was treated, stitches were placed in her back and she was released.
Ms. Sierra thereafter visited the St. Bernard Clinic on approximately six occasions complaining of headaches and back pain. She saw Dr. Voegel and also Dr. Morris for x-rays.
Shortly after the accident, the plaintiff visited a gynecologist, Dr. Llanos, who checked the condition of her unborn child. Dr. Llanos advised the plaintiff that the infant’s heart beat was normal but little else could be determined until after the birth of the baby. The infant was born without complications on July 7, 1979.
Ms. Sierra also visited Dr. Sheldon Hersh, an internist and her husband’s physician. She first visited Dr. Hersh on May 11, 1981 and she complained of headaches which had started two years before. Dr. Hersh prescribed Fiorinal, heat applications and neck massage. On June 12, 1981 plaintiff returned to Dr. Hersh. She advised him that she continued to suffer from headaches but they were milder. On July 30, 1981 the plaintiff was sent to have x-rays, a CAT scan, EEG and thermography of the head. These tests proved negative. On October 26, 1984 the plaintiff was better than on her last visit and only occasionally suffered from headaches. Dr. Hersh was of the opinion that Mrs. Sierra would continue to suffer from headaches for the rest of her life. He originally attributed the headaches to tension, but, at that time, he was not aware of the history of plaintiff’s fall. However, at trial, having learned the history of plaintiff’s fall, Dr. Hersh testified that it was more probable than not that the headaches were caused by the fall and would continue indefinitely.
The plaintiff continues to suffer from headaches and back pain. The back pain currently occurs every 3 to 4 days and the headaches occur about every 5 days.
Although Mrs. Sierra complained of visual problems after her fall, Dr. Michael Wall, a neuropthalmalogist who examined her in 1982 and 1984 found that these problems were not related to the fall which occurred May 2, 1979.
The duty of care required of store owners for the protection of their customers in such cases as this is set forth in Gonzales v. Winn Dixie Louisiana, Inc. 326 So.2d 486 at 488 (La.1976).
The duty of a store owner to protect his customers from foreign substances on the floor is one of reasonable care under the circumstances. Reasonable protective measures, including periodic inspections, must be taken to keep the *153 aisles and floors free of substances or objects that may cause customers to fall. Kavlich v. Kramer, La., 315 So.2d 282 (1975); Tripkovich v. Winn-Dixie of Louisiana, Inc., La.App. 284 So.2d 80 (1973); Fontanille v. Winn-Dixie Louisiana, Inc. La.App. 260 So.2d 71 (1972), cert. denied, 261 La. 1064, 262 So.2d 44 (1972); Prosser, Law of Torts, Sec. 61, pp. 392-392 (4th ed. 1971). The circumstances that determine the reasonableness of protective measures include the type and volume of merchandise, the type of display, the floor space utilized for customer service, the nature of customer service, and the volume of business. As we recently noted, the self-service grocery system requires customers to focus their attention on the shelves and to handle merchandise. The system increases the risk of harm from objects dropped on the floor by customers and, correspondingly, the duty to minimize the risk by frequent inspections and cleanups. See Kavlich v. Kramer, supra; Prosser, Law of Torts, Sec. 56 p. 349 (4th ed. 1971).
Once it is established that a foreign object was on the store’s floor which has caused the plaintiff to fall, the burden shifts to the defendant store owner to exculpate himself from negligence by proving that he has fulfilled his twofold duty to discover and correct dangerous conditions reasonably anticipated in its business activities. Brown v. Winn Dixie Louisiana, Inc., 452 So.2d 685 (La.1984) citing Gonzales v. Winn Dixie Louisiana, Inc., supra; Blanchard v. Schwegmann Giant Supermarket, Inc., 463 So.2d 616 (La.App. 4th Cir., 1984).
The defendant contends that it met its burden of rebutting the presumption of negligence and thus, the jury erred in finding them liable.
The record reveals that on May 2, 1979 Karen Fletcher was employed by the defendant at its Chalmette Store as a porter-ette. She testified that her duties consisted of cleaning an assigned section of the store. She was not the only person who was assigned to keep the store clean. She was also instructed to walk about the store within her section, to check for and clean up spills. She kept a log sheet which indicated her activities during her work day. She indicated that it would take a few minutes to sweep an aisle and if the spill was a large one, more than one person would be required to assist. Ms. Fletcher testified that on the date of this accident she had swept the aisle at 11:23 a.m. and there was nothing on the floor. She stated that she never heard the plaintiff fall but she had just finished sweeping the aisle in question when, while still within this aisle, she turned and saw Ms. Sierra on the floor. Ms. Fletcher further testified that she did not hear glass breaking nor did she see anything on the floor where the plaintiff fell.
Willie Danos, the chief of store security, testified that he estimated that this accident occurred at 11:25 a.m., as he had responded immediately to an announcement over the store loudspeaker, went directly to the aisle where plaintiff had fallen and rendered assistance at that time. He found no witnesses to the accident. He checked Ms. Fletcher’s log and discovered that she had cleaned this aisle at 11:23 a.m., some 2 minutes before the accident. However, Danos admitted that this was merely an estimate as the exact time of the fall of the plaintiff was not known. He stated that the porterettes have the duty to keep the floors clean at all times and whenever store personnel would see anything on the floor they would blockade it off until the porterettes arrived. Security personnel were also responsible for keeping a “constant watch.” Danos stated that the aisles are 6 feet wide by 150 feet long, and plaintiff fell in the part of the aisle closest to the rear of the store. When he arrived, Danos saw a broken bottle of Crystal Hot Sauce on the floor. At the time, the plaintiff was conscious, seated on the floor and complaining of pain in the back of her head and on her right side. Danos called an ambulance for the plaintiff. He also completed a store accident report.
*154 Although the porterette testified that eleven aisles comprised her zone of assigned cleaning and that it took just a few minutes to sweep each aisle, her log indicated that on the date of this accident, the aisle upon which the plaintiff fell was cleaned at 11:23 and not cleaned again until 12:29, that is over an hour later. Furthermore, the porterette testified that she had swept the aisle just before Ms. Sierra fell and that there was nothing on the floor at that time nor did she see anything on the floor after the fall. This testimony was in conflict with that of the plaintiff, Ms. Sierra, who testified that she fell on a bottle of hot sauce. It was also in conflict with the testimony of Willie Danos and David Sierra who stated that they saw sauce and broken glass on the floor, after the accident, in the area where the plaintiff fell.
The jury apparently disbelieved the por-terette’s version of the facts and apparently concluded that a hazard, (i.e., a broken bottle and. contents on the floor of the aisle), existed and that the defendant’s employee was in the area shortly before the plaintiffs fall but either failed to discover or neglected to remove the hazard. The jury also apparently concluded that the defendant failed to exculpate itself from the presumption of negligence resulting from plaintiff’s testimony. There exists support in the record for this finding and we cannot say that it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Defendant next argues that the court granted a directed verdict disallowing David Sierra’s recovery of the plaintiff’s medical expenses as the couple was not married at the time. Accordingly, it was error for the jury to award those damages to Ms. Sierra since this item of damages was only requested by Mr. Sierra in the petition.
The record reveals that the medical expenses in this case were paid for by and on behalf of the plaintiff, Gloria Sierra. Although the petition asks for these damages by Mr. Sierra alone, the petition also seeks “all general and equitable relief”.
In Louisiana no technical forms of pleadings are required. C.C.P. Art. 854. Additionally “the final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings ...” C.C.P. Art. 862.
In this case the jury properly awarded Gloria Sierra the $500 for medical expenses incurred by her and on her behalf. Accordingly, we find no error by the trial court in this regard.
Defendant contends that the jury erred in awarding the plaintiff $15,000 for physical and mental pain and suffering without a corresponding award for physical injuries.
The jury rendered the following response to item number 3 of the jury interrogatories.
3. What is the total amount of damages suffered by plaintiff, Gloria E. Sierra, if any, for:
A. Physical Injuries Suffered $_
B. Pain and Suffering, both Physical and Mental $15,000.00
C. Permanent or Partial Disability, if any ¡j>_
D. Medical Expenses $ 500.00
Total $15,500.00
Although a court may award damages for mental anguish, pain and distress without an award for physical injuries, it is apparent in this case that the jury simply combined these two items of damages, (i.e., items “A” and “B” of the jury interrogatories) into one lump sum award. See: Badgett v. Keith, 415 So.2d 337 (La.App., 2nd Cir., 1982).
Since this record presents evidence of both physical injuries and mental anguish, this award, for both items of damages, is proper. Accordingly defendant’s assignment of error lacks merit.
Since we conclude that the jury award encompassed damages for physical injuries and mental anguish, we do not discuss the defendant’s contention that this award of $15,000 for mental anguish alone, is excessive. We do, however, find that *155 this award, although in the upper range for such injuries, was not an abuse of discretion. The plaintiff sustained a blow to the head and back during the fall. She incurred a laceration of the back which required stitches. She continued to suffer for a period of 6 years with headaches and back pain. She will continue to suffer from headaches for the rest of her life. Additionally she incurred the mental anguish, for at least 2 months, over the uncertainty of whether her child’s health had been impaired by the fall. Considering these physical injuries and the mental distress of this plaintiff and the effect upon her life we cannot say that this lump sum award of $15,000 in general damages was clearly wrong.
For the reasons assigned the judgment of the district court is affirmed at appellant’s cost.
AFFIRMED.