CIACCIO, Judge.
Plaintiff, John B. Cascio, Sr. filed this action for damages for injuries received on January 7, 1987, in a “slip and fall” at Nicosia Supermarket in Violet, Louisiana. The district court awarded the plaintiff damages of $85,800.33 and defendants appeal complaining that the trial court erred in its findings on liability and quantum. We affirm the judgment of the district court.
The issues raised on appeal are: (1) Whether the trial court erred in finding an accident occurred at the defendant’s supermarket which caused injuries to the plaintiff; (2) Whether the defendant breached a duty to the plaintiff based upon the absence of proof of any object or substance on the floor in proximity to the alleged accident location; (3) Whether the trial court erred in finding the plaintiff free of negligence; and, (4) Whether the award of damages was excessive.

Liability

In its reasons for judgment, the trial judge made the following finding regarding the issue of liability:
[[Image here]]
The plaintiff testified that on the afternoon (between 3:00 and 4:00 P.M.) of Wednesday, January 7th, 1987, he went to defendant, Nicosia’s store to purchase several items. After selecting these items, he went to a check-out line with a person or so ahead of him. Remembering he needed cigarettes, he left the line, went around the counter and obtained the cigarettes. On his return to the line, he stepped on a can of tomato paste, fell and injured himself. He further testified that he had neither seen his son, nor knew that he had been in the store.
The defendant’s principal witness, Miss Priscilla Pizani, (Prisse), assistant store manager, testified'as to the store’s clean-up procedures. This or these procedures are simply a sweep and mop by Edward Johnson, a part time porter, who is in by 7:00 A.M. and out by 10:00 A.M. No other clean-up exists except that store employees are to look for, pick up and clean up any articles or spills on the floors as they are discovered. The maximum number of employees at any one time are nine including meat people, four of whom are cashiers and two in management. No periodic check system exists. None in this instance for five (5) hours.
Miss Pizani’s office is an elevated booth allowing her or other occupants to visually oversee the store’s operations. From this advantageous observation post, she saw John Cascio, Jr. in the store prior to the time of the incident. As was her custom, she watched the suspect, John Cascio, Jr., who was looking at or selecting merchandise. She testified that she thought she heard a can fall and roll, but did not see it. Further, “I watched him (Cascio, Jr.) until he left the store.” She did not see Cascio, Sr.
Although she was suspicious of Cascio, Jr.’s honesty, Miss Pizani did not investigate the cause of the noise she thought she heard, nor did she direct anyone else to do so, despite the fact she was positive It was a can, and probably from the tomato paste section. The Court considers Miss Pizani’s testimony to be post incident conjecture.
Cascio, Jr. verified he bought oriental noodles and tomato paste, checked out, left the store and did not see or hear any news of his father until he visited the store the next morning. He did not see his father in the store and did not know he was there. This testimony is unrebutted by either testimony or circumstance.
Plaintiff, Cascio, Sr., denies seeing or knowing his son was in the store. He acknowledged seeing his son on the morning of the incident. The meeting was not amicable as he, Cascio, Sr., chastised his son for having a six pack of beer and *745 drinking so early in the day. Typically, Cascio, Jr. left his father’s home in less than the best of moods. Except for the statements of Miss Pizani and Mrs. Mon-tezino that the incident occurred approximately five (5) minutes after Cascio Jr. left, (Mrs. Lopez stated to an adjuster, perhaps 10 minutes). There is no evidence that Cascio Jr. and Sr. could have been in the store together. Neither Miss Pizani, Mr. Nicosia, Mrs. Montezino or Mrs. Lopez knew that Cascio Sr. was in the store until he was injured despite the advantageous observation post ladied (manned) by Miss Pizani.
Thus, the court must and does conclude that:
1. the clean-up procedures were inadequate;
2. defendant had knowledge of a rolling object on the floor;
3. defendant did nothing to locate the rolling object, but let it remain wherever it was in aisles or shopways; and
4. Injury was caused to a customer who encountered the rolling object with his foot.
Under Civil Code Articles 2315, 2316, 2317 and 2320, liability is established, unless the defendant can show negligence (victim fault) on the part of the plaintiff in some degree to bar or reduce plaintiffs recovery under Civil Code Article 2323. In this, the defendant has the burden of proof. Defendant has not carried the burden. Defendant’s attempted proof showed only that it did not exercise due diligence.
The court finds the accident occurred due to defendant’s negligence in the enumerated particulars above stated. The legal result is that defendant is liable to plaintiff.
[[Image here]]
The defendants argue that the trial court erred in finding them negligent.
In support of their argument, defendants first contend that the plaintiff and his son were not credible witnesses and hence, were not worthy of belief. In this regard they point to the shoplifting arrest of the younger Mr. Cascio and certain alleged discrepancies in the testimony of the plaintiff.
It is within the sound discretion of the trial judge, as the finder of fact, to observe first hand the testimony and demeanor of all witnesses and to assess their credibility. See: Blanchard v. Schwegmann Giant Supermarkets, Inc., 463 So.2d 616 (La. App., 4th Cir., 1984). A reviewing court will not set aside the factual determinations by the trial court unless they are clearly wrong. Canter v. Koehring Co., 283 So.2d 716 (La., 1973); Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978).
In this case the trial judge observed the plaintiff and his son at trial. He heard them testify and concluded from their testimony that the plaintiff fell on a tomato paste can while in the defendant’s store. He further concluded that neither witness knew the other was in the store at the time of this accident and thus he apparently rejected the defendant’s theory of a conspiracy between the father and son regarding the accident. These findings are supported by the record and we cannot say that the trial judge’s assessment of credibility in this regard is clearly wrong.
The defendants next argue that the plaintiff failed to meet his burden of proof in that he failed to show that plaintiff stepped upon a can of tomato paste.
The duty of care required of store owners for the protection of their customers, in cases such as this, is set forth in Gonzales v. Winn Dixie Louisiana, Inc., 326 So.2d 486 at 488 (La., 1976):
The duty of a store owner to protect his customers from foreign substances on the floor is one of reasonable care under the circumstances. Reasonable protective measures, including periodic inspections, must be taken to keep the aisles and floors free of substances or objects that may cause customers to fall. Kavlich v. Kramer, La., 315 So.2d 282 (1975); Tripkovich v. Winn-Dixie of Louisiana, Inc., La.App. 284 So.2d 80 (1973); Fontanille v. Winn-Dixie Louisiana, Inc., La.App., 260 So.2d 71 (1972), cert. denied, 261 La. 1064, 262 So.2d 44 (1972); Prosser, Law of Torts, Sec. 61, pp. 392-392 (sic) (4th ed.1971). The circumstances that determine the reason *746 ableness of protective measures include the type and volume of merchandise, the type of display, the floor space utilized for customer service, the nature of customer service, and the volume of business. As we recently noted, the self-service grocery system requires customers to focus their attention on the shelves and to handle merchandise. The system increases the risk of harm from objects dropped on the floor by customers and, correspondingly, the duty to minimize the risk by frequent inspections and cleanups. See Kavlich v. Kramer, supra; Prosser, Law of Torts, Sec. 56 p. 349 (4th ed.1971).
Once it is established that a foreign object was on the store’s floor which caused the plaintiff to fall, the burden shifts to the defendant store owner to exculpate himself from negligence by proving that he has fulfilled his twofold duty to discover and correct dangerous conditions reasonably anticipated in its business activities. Brown v. Winn Dixie Louisiana, Inc., 452 So.2d 685 (La., 1984) citing Gonzales v. Winn Dixie Louisiana Inc., supra; Blanchard v. Schwegmann Giant Supermarket, Inc., supra.
The defendants allege that since the plaintiff never met its burden of proof, the burden never shifted to them to exculpate themselves from liability. We disagree.
The plaintiff testified that on the date in question he went to the defendant’s grocery at approximately 2 to 3 p.m. in order to buy groceries. He had dealt with this store since 1978. He picked up 12 to 15 items and placed them in his shopping cart. He put the cart in the check out line, left the line and went to get some cigarettes. When he returned to his basket he took 2 or 3 steps and “stepped on some type of merchandise.” While on the ground, after the fall, tbe plaintiff saw a tomato paste can under the store rack and he pointed this out to the assistant store manager, Priscilla Pizani.
Additionally, Priscilla Pizani, the assistant store manager testified that she heard a can fall and roll across the floor. She assumed it rolled under the cigarette case, but she didn’t see or look for it. She also didn’t send anyone to locate the can. Mr. Pizani admitted that, after the plaintiff fell, he pointed out a tomato paste can and it was located under the door of the cigarette rack.
Based upon this testimony the trial court correctly found that the plaintiff had met his burden of proving that there was a foreign object on the floor which caused his fall. Thus, the burden shifted to the defendants to prove appropriate actions taken to discover and correct the dangerous condition. The record reflects, and the trial judge correctly found, that the defendants failed to adhere to their duty and for this reason, they did not exculpate themselves from negligence. He found that their clean-up procedure was inadequate and, after admittedly hearing a can fall from a shelf and roll on the floor, the assistant store manager took no steps .to find and remove the can. We agree with his findings.
Finally defendants argue that the court erred under the circumstances in finding the plaintiff free from negligence. They reason that the plaintiff approached the cashiering station two times and if a dangerous condition existed he should have seen it.
In this regard the trial court found that the defendants failed to prove negligence by the plaintiff, and the record supports that finding. There was no proof presented to show that at the time of this accident the tomato paste can was visible such that one approaching the cashier station should have seen it. We find no error in this regard. Canter v. Koehring Co., supra; Arceneaux v. Domingue, supra.

Damages

The trial judge awarded the plaintiff damages in the amount of $85,800.33 and defendants contend that the sum is excessive. In this regard defendants allege the trial court’s conclusion that the plaintiff’s pre-existing condition was aggravated by the slip and fall at the defendant’s *747 store is not supported by the evidence at trial.
In his reasons for judgment the trial judge recognized the pre-existing condition of the plaintiff resulting from a series of accidents which affected his back. The trial judge found that as a result of this slip and fall “plaintiffs condition was'worsened and he has and does live in significantly more pain than he did before.” The trial court found the testimony of Dr. Marrero impressive. At trial the following observation was made by Dr. Marrero:
Q. Doctor. Given the history related to you by the patient, and your clinical findings, do you relate his current problems that he has now, to his slip and fall accident at Nicosia’s in January of 1987?
A. I would think he had aggravation of his pre-existing condition. Okay, and I’d have to relate his injury now to that from his history. (Tr.178).
As such, the conclusion of the trial judge that plaintiffs fall aggravated his pre-ex-isting condition is supported by the record and for this reason, defendants’ allegations to the contrary are unfounded.
We also find that the general damage award of $75,000 is not excessive under the circumstances of this case.
In assessing damages in cases of quasi-offense much discretion is left to the trial judge. Perniciaro v. Brinch, 384 So.2d 392 (La., 1980). Before an appellate court will disturb such an award, the record must clearly reveal that the trier of fact abused his discretion in making the award, based upon the particular injuries and their effect upon the particular individual who sustained the injuries. Perniciaro v. Brinch, supra; Reck v. Stevens, 373 So.2d 498 (La.,1979).
The record reveals that at trial the plaintiff testified to a series of accidents with injury from 1971 through 1987. He stated that he injured his back in 1971 while he was climbing a ladder. He was then treated at the Veterans Administration Hospital and surgery was performed for a slipped disc.
In 1973 plaintiff was involved in a rear end collision and his pain had almost returned to pre-accident levels. In 1974 he slipped on a tomato paste can at the Arabi Park Food Store. At that time a spinal fusion was recommended but the plaintiff declined. In 1975 the plaintiff slipped on some bath oil which was on the floor of a Winn Dixie food store. This made his back condition worse than it had been since his spinal operation. He stated, however, that his back did improve after this accident and he was able to hunt, fish, and cut grass but he could not engage in any other manual labor.
In 1980 plaintiff was involved in a slip and fall at the One Stop in Poydras, Louisiana. At that time he aggravated his back and suffered pains. He thereafter had open heart surgery. He now has angina and since surgery has had angina attacks. He is treated for this condition by Drs. Iteld and Jones. He was treated for his back problem by Dr. Bertucci. He testified that his back pain leveled off and then disappeared until the current accident on January 7, 1987.
He stated that after this current accident he went home and was suffering pain in his back for which he took some pain pills and went to bed. He was still suffering pain when he tried to get out of bed. He had a bruise on his back and as the day progressed the pain increased. He thereafter went to De la Ronde Hospital due to the pain and remained in the hospital 4 days. He was treated by Dr. Bertucci until May and there after by Dr. Marrero.
The plaintiff testified that he experiences pain in his legs and back which feel like electric -shocks. These pains have caused him to fall several times thus aggravating his condition. Mr. Cascio also states that he feels his back is worsening. He is in constant pain for which he takes Percodan. He says he would undergo the spinal fusion now because of the pain but he is not sure physically whether he can undergo this operation. The plaintiff stated that prior to this accident he would fish, crab, go camping and go out to dinner but these *748 activities have been curtailed due to his injuries.
Dr. Byran Bertucci examined the plaintiff on the date of this accident and found him to have a contusion in the lumbosacral area about 8V2" in dimension, an abrasion of the lower extremities, cardiac problems and musculoskeletal problems with pain radiating from the lumbar spine into the leg. The plaintiff was hospitalized under Dr. Bertucci’s care for 4 days and seen by him 13 times on office visits. *The last visit was on May 9, 1987 at which time the contusion was totally resolved. The plaintiff still suffered episodes of pain with shooting pains in his legs which resulted in plaintiff falling. On this occasion the plaintiff was referred to an orthopedist. Dr. Bertucci diagnosed the plaintiff as having suffered a lumbosacral sprain post disc surgery with a contusion of the lower back.
Dr. Roy Marrero, an orthopedic surgeon first saw the plaintiff on May 5, 1987 at which time he gave a history of a fall on January 7, 1987. The plaintiff also relayed to Dr. Marrero the fact that he was hospitalized following the accident. He suffered electric shock-like pain in his low back and he had undergone a myelogram. An examination of the plaintiff evidenced a tenderness in the lower lumbar area, right elbow and mid line of the lumbar spine. At that time Dr. Marrero diagnosed the plaintiff as suffering from spondylolisthesis, a lumbar spine sprain and contusion of the elbow. He prescribed Elavil and Valium.
Dr. Marrero next saw the plaintiff on June 2, 1987 at which time he was suffering electric shock like pain in his back and spasms of the back muscle. The physician found plaintiff as having low back pain with sciatia, and he prescribed Percosetts + Triavil 4.
On June 25, 1987 plaintiff again visited Dr. Marrero. At this time he reported that his legs had given away and that he had fallen two times. He stated that his legs were heavy and there were electric shocks in the right leg. He manifested a reduced range of motion in his back and his reflexes were decreased on his right lower extremity. Surgery was recommended but the plaintiff declined. On July 28, 1987 plaintiff reported continual falling and pain. An examination revealed spasms of the lumbar spine. On September 21, 1987 the plaintiff stated that he had again fallen 2 times. His range of motion was the same. A visit in October, 1987 evidenced plaintiff’s low back sprain as being unchanged. At the time of the next visit, November 18, 1987 plaintiff was still suffering low back pain and he reported that he had fallen on November 2, 1987 and again injured his back. His pain was more severe and he was now walking on crutches. On December 22, 1987 the plaintiff complained of tenderness in the lower lumbar spine. In January 1988 plaintiff stated that he had low back pain which was severe and accompanied by electric shocks. Tests were not conducted because plaintiff could not afford them, however X rays revealed spondylolisthesis and a narrowing of the disc at L-4, L-5 and L-5, S-l. Dr. Marrero’s final diagnosis was that plaintiff had an unstable lumbar spine with some nerve root impingement in the lumbar spine. He also testified that this accident aggravated the plaintiff’s pre-existing back condition. He stated that plaintiff would benefit from a lumbar fusion. However, it would not provide him total relief. He stated that although plaintiff is now considering the fusion because of the pain he suffers, plaintiff is at a greater risk for such surgery because of his heart condition.
Considering the aggravation of the plaintiff’s pre-existing spinal condition, the instability of his lumbar spine with nerve root impingement, his prior and present pain and episodes of falling which exposes him to further injury, his heart condition which would decrease his chances of survival if he were to undergo spinal surgery in an attempt to alleviate some of his pain, and the effect of this condition upon Mr. Cascio, we cannot say that the trial judge’s award of $75,000 general damages in this case was an abuse of discretion.
Finally, defendants argue that an award of $4,500 for future medical expenses was in error as the record contains *749 no evidence as to the need for costs of future medical care.
Dr. Roy Marrero was of the opinion that the plaintiff would benefit from a spinal fusion, however, the plaintiff had expressed reservations to the surgery because of his heart condition. Dr. Marrero admitted, however, that in the last couple of visits with this patient that he had now begun to give serious thought to having the procedure done. When questioned about the lumbar fusion, Dr. Marrero testified that the surgical expense would be $2,500 to $3,000 and plaintiff would be expected to be in the hospital for a week to ten days.
Under these circumstances the trial judge correctly awarded future medical expenses and we cannot say that an award of $4,500 was clearly wrong.
For the reasons assigned the judgment of the trial court is affirmed at defendants’ costs.
AFFIRMED.