284 So.2d 80 (1973)
Angela WINDHORST, wife of/and Frederick M. TRIPKOVICH
v.
WINN-DIXIE LOUISIANA, INC., and the Fidelity & Guaranty Company of New York.
No. 5748.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 1973.
Rehearing Denied November 2, 1973.
Writ Refused December 19, 1973.
*81 Christovich & Kearney, James F. Holmes, New Orleans, for defendants-appellants.
Windhorst, Heisler, DeLaup & Wysocki, Robert A. Collins, New Orleans, for plaintiffs-appellees.
Before LEMMON, J., and FEDOROFF and GAUTHIER, JJ., Pro Tem.
GAUTHIER, Judge.
Plaintiffs, Mrs. Angela Windhorst, wife of/and Frederick M. Tripkovich, filed this suit against defendants, Winn-Dixie Louisiana, Inc., and The Fidelity & Casualty Company of New York, seeking recovery for damages, past and future medical expenses and maid and nursing services.
On February 18, 1970, Mrs. Angela Tripkovich was shopping in a supermarket owned and operated by defendant, Winn-Dixie Louisiana, Inc. (Winn-Dixie), at 5016 West Esplanade Avenue, Metairie, Louisiana. While rolling a shopping cart in front of her, Mrs. Tripkovich turned into an aisle wherein soft drinks are displayed. A rubber mat ran the entire length of that aisle and covered about half the aisle width. While her basket was in the aisle, she stepped toward the beverage display and her "foot went under the mat" causing her to fall with "my knee bent under my body." As a result of this fall Mrs. Tripkovich suffered serious injuries to her left knee which resulted in extensive treatment, three separate operations and the anticipation of additional surgery.
After trial on the merits, judgment was rendered in favor of plaintiffs awarding damages in the amount of $35,000.00; past medical expenses and domestic help in the amount of $7,372.53 and $935.00 respectively; and future medical expenses in the amount of $1,500.00. From this adverse judgment defendants prosecute this appeal. Plaintiffs answered the appeal seeking an increase in the award.
It is well settled that a storekeeper is not the insurer of the safety of visitors. However, he has a responsibility to provide a safe place for his customers by keeping floors, aisles and passageways in a reasonably safe condition for use in a manner consistent with the purposes of the premises. Fontanille v. Winn-Dixie Louisiana, Inc. La.App., 260 So.2d 71.
In the present case representatives of Winn-Dixie admitted that the runner or mat had been placed in the aisle alongside the soft drink display as a safeguard against exploding drinks that could be knocked off or fall from the soft drink display shelves. Since the mat formed a part of the aisle or passageway, Winn-Dixie had the duty to maintain the mat in a safe condition and to remedy any defects or any hazards presented to customers.
Winn-Dixie contends that plaintiffs failed to prove the mat was defective or hazardous at the time of the accident. The testimony clearly reveals, and the *82 Trial Judge so found, that the runner or mat was very dirty, old, worn, frayed, uneven and had an old tear on the corner of the runner or mat where the plaintiff tripped on the date in question. This testimony is confirmed by photographs taken the day following the accident which clearly show the tear in the runner or mat as well as the rumpled, uneven and uplifted condition.
There is some testimony in the record that disputes the condition of the runner or mat. However, these same witnesses admitted that the runner or mat was not secured to the floor by any device; that waves and ripples were noticed from time to time in the runner or mat; that the runner or mat was removed from the floor periodically for cleaning possibly being replaced in a reversed position than that from which taken; and that the runner or mat was cut or shortened at a date following the accident.
We are of the opinion that the preponderance of the evidence established that Winn-Dixie allowed the continued use in their store of an old, dirty, frayed, uneven runner or mat with an old tear; that on February 18, 1970, the store manager and assistant manager knew or should have known of the hazardous condition of the runner or mat; and that on that date, Mrs. Tripkovich fell in the Winn-Dixie store after being tripped by the unsafe runner or mat.
A storekeeper's duty to its patrons is not lightly considered. This duty owed by storekeepers is an affirmative one in that he must take active measures to secure safe passageways consistent with the purposes of the store by inspection and cleanup procedures. Fontanille v. Winn-Dixie Louisiana, Inc., supra.
We are convinced, as was the Trial Judge, that the plaintiffs have shown a lack of reasonable due care on the part of Winn-Dixie. Winn-Dixie was obligated to keep its aisles in a reasonably safe condition. The procedures employed by Winn-Dixie in this instance were wholly inadequate. Had Winn-Dixie established proper procedure for the installation, maintenance, examination, repair, cleaning and placement and replacement after cleaning of the runner or mat, its employees could have and would have known the hazardous condition of the runner or mat.
Turning to the question of quantum, it is readily apparent that the record established that Mrs. Tripkovich, a 34 year old mother of three, suffered severe injuries. There is no dispute among the physicians who treated and examined her.
Dr. James E. Weilbaecher, Jr., an orthopedic surgeon, testified that he first saw Mrs. Tripkovich for her left knee problem on February 18, 1970. His examination showed a contusion over the left knee joint line with possible lateral cartilage tear. Because of the continued persistent pain and her inability to bear weight, surgery was performed on the knee on March 11, 1970, at which time a lateral cartilage tear was removed.
Pain in the left knee continued to persist and a second operation was performed on June 23, 1970, at which time an arthrotomy was performed with a medial meniscus and two loose bodies being removed from the knee. The knee continued to feel stiff and cause pain. By September patella grating was present, the knee continued to lock and give way and pain persisted. On April 22, 1971, a third operation was performed for realignment of the patella and her leg was then placed in a long leg cast. The patient showed some improvement following the third operation, but had recurrent subluxation of the patella, severe pain and continued patella crepitation.
It was Dr. Weilbaecher's opinion that if these symptoms persisted he would have to remove the patient's kneecap. This operation would hopefully relieve the pain, but would cause the loss of strength to the knee particularly in the last thirty degrees of extension.
*83 Dr. Weilbaecher then estimated that Mrs. Tripkovich presently had a 30% disability of her left knee, which could be reduced to a 25% permanent disability with removal of her left knee cap.
Dr. J. Kenneth Saer also examined Mrs. Tripkovich on one occasion on May 18, 1972, and his medical report was introduced into evidence by stipulation. Dr. Saer confirmed Dr. Weilbaecher's opinion of a 30% physical impairment of the knee and that there was evidence of some chondromalica of the patella. While expressing an opinion that the patient would be better with prolonged efforts of strengthening the quadriceps mechanism and a weight loss, Dr. Saer did admit that the patient has a problem for which an operation is often entertained.
Our Supreme Court has made it clear that trial courts have great discretion in awarding general damages for personal injuries. These awards should not be disturbed in the absence of clear abuse. Lomenick v. Schoeffler, 250 La. 959, 200 So. 2d 127.
In view of the serious injury, extensive treatment, substantial permanent disability and disfigurement sustained by Mrs. Tripkovich, we cannot say that the trial judge abused the discretion vested in him to set quantum, nor can we say that the award is inadequate.
The only remaining issue is that of appellant's claim that the future medical expenses should not be allowed. The record shows that Dr. Weilbaecher testified that if the patient's symptoms persisted he would have to remove the patella. Dr. Saer admitted that an operation of this type was one remedy to the condition that existed. The trial judge heard the grating of the patient's knee. Mrs. Tripkovich testified that she knew future surgery was needed and that she was presently on the waiting list at Baptist Hospital for the performance of that surgery.
We are therefore of the opinion that the need for the future surgery has been established with reasonable certainty. It is outside the realm of speculation and conjecture as it has been scheduled for performance. See Carhee v. Scott, La.App., 104 So.2d 236.
For the reasons hereinabove assigned, the judgment of the trial court is affirmed at appellants' costs.
Affirmed.