541 So.2d 315 (1989)
Patricia and Harrison WEBER
v.
BUCCOLA-McKENZIE, INC. and State Farm Insurance Company.
No. 88-CA-689.
Court of Appeal of Louisiana, Fifth Circuit.
March 15, 1989.
*316 John E. Unsworth, Jr., Hailey, McNamara, Hall, Larmann & Papale, Metairie, for defendants-appellants.
Jerome P. Halford, New Orleans, for plaintiffs-appellees.
Before KLIEBERT, BOWES and DUFRESNE, JJ.
BOWES, Judge.
Appellants Buccola-McKenzie, Inc. and State Farm Insurance Company (hereinafter Buccola-McKenzie) appeal a jury verdict in favor of plaintiffs Patricia and Harrison Weber (hereinafter Weber) in a suit for damages for personal injury resulting from a slip and fall. The Webers have answered the appeal, generally contesting *317 quantum and expert fees assessed. We revise in part and affirm as follows.
Patricia Weber is a real estate agent employed by Gertrude Gardner, Inc. and was so employed on August 1, 1985. On that date, pursuant to her employment, she entered the offices of Buccola-McKenzie located on Williams Boulevard to deliver a real estate contract to an agent in that office. The primary entrance to the building, which had been originally constructed as a private residence, was in the rear of the building, on Vintage Street. Having completed her business inside, which took approximately five minutes, Mrs. Weber attempted to exit the building via the Vintage Street door where she had originally entered. As she stepped out of the door, her heel was caught in a woven mat outside the door, and Mrs. Weber lost her balance and fell. She injured her left arm, fracturing the forearm, and was taken to the emergency room at East Jefferson, where she was treated and released.
The arm was placed in a cast for a total of six weeks. A lengthy period of painful physical therapy followed the removal of the cast. Mrs. Weber was treated by Dr. John Montz, an orthopedic physician, over a period of twenty-nine visits, and received sixty-nine physical therapy treatments.
In addition to claimed damages for personal injuries, Mrs. Weber alleged that she suffered a loss of income due to her inability to continue selling real estate. After trial on the merits, the jury found that both Buccola-McKenzie and Mrs. Weber were negligent in the accident which resulted in her injuries, in the amounts of 25 and 75% respectively. The jury awarded damages in the sum of $75,000 for past, present, and future suffering, mental anguish, and disability, $30,000 for past and future loss of earning capacity, and $5,000 for medical expenses. The jury verdict was made the judgment of the court awarding plaintiff $27,500.00 (25% of the total judgment), with interest and costs, and awarded expert fees to Dr. Montz of $200.00, and to Mr. Tilghman Chachere, Jr. of $300.00.
On appeal, Buccola-McKenzie urges that it was error to find that it was negligent, and also that the trial court abused its discretion in the quantum of the award granted to Mrs. Weber for loss of earning capacity and for pain and suffering. Appellee answered the appeal generally urging that the damages be increased and that the expert fee of Dr. Montz be raised to $500.00.

LIABILITY
The door which Mrs. Weber attempted to exit was the back door of a formerly residential building which had been somewhat modified for its then commercial use as a real estate office. The doorway had a step-down of approximately six inches from house level to ground level which was paved with rough "pea" gravel. On the ground directly beneath the doorway was an unattached woven rope mat. Mr. Tilghman Chachere, an architect, testified that the doorway, lacking a landing in accordance with the Jefferson Parish Building Code for commercial buildings, was hazardous and, in fact, was hazardous even as a residential building, due to the absence of some landing. Numerous witnesses, all of whom were other agents of Gertrude Gardner, testified that they had stumbled or tripped several times each in that doorway on the mat, and at least one witness claimed to have complained to Buccola-McKenzie, although none of them had suffered injuries. When Mrs. Weber fell, she was wearing low heeled shoes, and there is nothing to suggest that she was walking at an immoderate rate of speed; she was looking straight aheadnot down at her feet, when her heel was caught in the mat and she fell.
Mr. Fred Vanderbrook, an engineer, testified for defendants that the doorway was not dangerous or unsafe, being an obvious step-down. Several Buccola-McKenzie employees testified that they had utilized the doorway on an almost daily basis and had experienced no problems with it.
Considering the totality of the evidence presented at trial, we find no manifest error in the finding of the jury that Buccola-McKenzie was negligent. We do so without regard to whether the building was *318 defective within the meaning of LSA-C.C. art. 2322. That article states:
Damage caused by ruin of building
Art. 2322. The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
While appellees appear to base their case in part on this article, claiming that the lack of a landing violates the parish building code, we find that the defendants are liable because the mat presented an unreasonable risk of harm.
Several cases have dealt with the slip and fall of a person due to a rug or mat. Tripkovich v. Winn-Dixie Louisiana, Inc., 284 So.2d 80 (La.App. 4 Cir.1973); Weaver v. Winn-Dixie of Louisiana, Inc., 406 So.2d 792 (La.App. 4 Cir.1981); and Molaison v. West Bros. of Thibodaux, 338 So.2d 726 (La.App. 1 Cir.1976) dealt with the duty of shopkeepers to their customers, and we believe the duty is the same in the present case.
In Molaison, the court stated:
We utilize the duty-risk analysis to determine whether West Brothers is liable for her injuries. Louisiana Civil Code Articles 2315 and 2316. See, also Shelton v. Aetna Casualty and Surety Company handed down on June 21, 1976, Louisiana Supreme Court, 334 So.2d 406.
A store proprietor is not an insurer of the safety of his patrons but does owe an affirmative duty to use ordinary care to keep the premises, including the floors, in a reasonably safe condition, Bergeron v. Employers-Commercial Union Companies, 306 So.2d 367 (La.App. 3rd Cir. 1975). In other words, the proprietor is held to the standards of reasonable men in view of the probability of injury to others, Shelton v. Aetna Casualty and Surety Company, supra.

In determining the duty owed, we look to several factors, including the nature of the business and premises, the volume of business and the type and likelihood of the risk that occurred. Bergeron, supra. Because of the many patrons and shopping carts which pass through the doorway and across the mat daily, the probability that the subject mat would become dislodged and create a hazard to the patrons of this store was great. Since the risk was great, West Brothers owed a correspondingly high duty to protect its invited customers, including the plaintiff herein, from injury.
In finding that West Brothers was liable because the mat was defective, the court discussed some of the evidence:
Neither Mrs. Molaison nor any of the witnesses noticed the condition of the mat prior to the accident, and, consequently, the plaintiffs could not prove by direct testimony that a dangerous situation existed at the time Mrs. Molaison attempted to walk across the mat. However, there was evidence presented which established that the rolling of shopping baskets through the doorway and over the mat sometimes caused it to become dislodged, thereby creating a dangerous condition.
Mrs. Molaison, in her deposition, clearly stated that the mat caused her to fall because her right foot went underneath it. West Brothers did not attack her credibility, nor could they produce another plausible version of the event since no one saw what happened until the plaintiff was lying on the floor.
It was also established that even though Mrs. Molaison was seventy-two years old at the time of the accident, she was steady on her feet and did not require a walking cane or other device to aid her in walking. Therefore, we assume she did not fall due to her own infirmity.
Similarly, Mrs. Weber testified that she caught her heel in the woven mat and fell, and there was no challenge to her credibility. No one else saw what happened to Mrs. Weber, but several other witnesses also testified as to having tripped on this mat in this doorway and one witness reported the problem. There is no evidence that Mrs. Weber fell due to her own infirmity.
*319 The mat formed part of the passageway of Buccola-McKenzie, and they had a duty to take active measures to secure a safe passageway consistent with the purposes of the business, i.e., to maintain a reasonably safe condition. See Tripkovich, supra. The mat was not installed or placed properly because it was not secured and apparently did not adhere to the ground; furthermore, the weave of the rope of which the mat consisted was not reasonably safe, or in reasonably safe condition, when a woman wearing low heeled shoes, and not physically or visually impaired, catches that heel in the mat and falls. Buccola-McKenzie is liable not only under LSA-C.C. arts. 2315 and 2316[1], but also under 2317:
Acts of others and of things in custody
Art. 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
We find no error in the determination of the jury that Buccola-McKenzie was negligent.
Plaintiffs complain of the percentage of comparative negligence assigned by the jury to Mrs. Weber asserting that she should not have been found contributorially negligent. The answer to defendants' appeal stated:
That the plaintiffs are aggrieved by the amount of damages awarded in the judgment, wherefore appellees pray that:
1.) The judgment appealed from be modified to increase the amount of damages from $27,500 to $150,000;
2.) That the expert fee of Dr. John R. Montz, and [sic] orthopedic specialist, be raised from $200 to $500;
3.) The amended judgment be affirmed;
4.) The appellant be condemned to pay the legal cost in the trial court and in this appeal.
LSA-C.C.P. art. 2133 defines answers to appeals:
Art. 2133. Answer of appellee; when necessary
An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee's action.
An answer to an appeal only operates as an appeal from those aspects of the judgment of which the answer complains. Liedtke v. Allstate Ins. Co., 405 So.2d 859 (La.App. 3 Cir.1981); Story v. Martin, 217 So.2d 758 (La.App. 4 Cir.1969). We are of the opinion that the answer to an appeal should be broadly construed "in the spirit of the proposition for which we need no citationthat appeals are favored in the law." Liedtke, supra. Accordingly, we find that by requesting the judgment be modified from $27,500 to $150,000, the appellees clearly appeal not only the quantum but also the percentage of comparative negligence. They request $75,000 in lost *320 earning capacity in addition to $75,000 in general damages, which two figures equal $150,000. Obviously, appellees' request for 100% of that figure is equivalent to a request for a modification of comparative negligence to 100% on the part of defendant-appellant.
In view of the testimony produced and cited, infra, by the number of witnesses who tripped on the mat and at least one of whom complained to defendant; the fact that Mrs. Weber was wearing low-heeled shoes and not walking hastily but was looking straight ahead; and in view of the above-cited jurisprudence on the duty to keep premises safe relative to passageways with rugs or mats, we find that defendant was as negligent as Mrs. Weber. It is true that Mrs. Weber had traversed the same passageway just minutes before and was aware of the existence and placement of the mat. However:
A person is not required to exercise the utmost caution at each moment to avoid every hazard of which he was ever aware. Even the "reasonable man" is permitted an occasional lapse of memory. The critical inquiry is whether or not he was exercising ordinary care for his own safety at the time of the accident and whether or not it was reasonable to forget [the presence of the wire.]

Soileau v. South Cent. Bell Tel. Co., 406 So.2d 182 (La.1981)
The law is well-settled that before the appellate court may disturb an award the record must clearly reveal that the trier of fact abused its discretion in making the award. See Reck v. Stevens, 373 So.2d 498 (La.1979); Klein v. Himbert, 474 So.2d 513 (La.App. 4 Cir.1985). The award is then "disturbed" only to the extent of lowering it (or raising it) to the highest (or lowest) point, as the case may be, to an amount that is found to be within the reasonable discretion or range afforded a trial court. Ard v. Samedan Oil Corp., 483 So.2d 925 (La.1986); Reck v. Stevens, supra.
In our opinion, both appellant and appellee were comparatively negligent each in the amount of fifty per cent. While questions of fact are generally left to the jury and their findings should not be disturbed unless they are clearly wrong (Soileau, supra; Arceneaux v. Domingue, 365 So.2d 1330 [La.1978]), we are of the opinion that there is manifest error in the jury's verdict, and that the jury was clearly wrong in not assigning these percentages. We also feel that an assignment of 50% negligence to Buccola McKenzie is the lowest figure reasonably within the discretion of the trier of fact.
Therefore, we revise this portion of the judgment as detailed above.

DAMAGES
The jury awarded Mrs. Weber $75,000 in general damages. She was sixty-one years old at the time of her injury. After falling and fracturing her arm, Mrs. Weber was in such severe pain that she became nauseated and faint. She was taken to the hospital where the fracture was treated and set, and given medication for pain. She was in a cast for six weeks. She visited Dr. Montz twenty-nine times, and underwent sixty-nine painful physical therapy treatments over a period of several months. The medication had side effects, amongst which was depression. She had difficulty driving and dressing herself, and apparently her appearance deteriorated. She was unable to perform ordinary chores at home, and unable to hold things. At the time of trial, she continued to experience pain and numbness in several fingers. She cannot wash her own hair, type, or play the piano. Dr. Montz described Mrs. Weber as having a low tolerance for pain and finally ascribed a disability rating to that hand of 25%. Under the facts of this case, we find no abuse of discretion in the award given by the jury, and, while it is on the high range of such awards, it is not so high so as to constitute manifest error, and we decline to disturb it.

LOSS OF EARNING CAPACITY
Mrs. Weber was a successful real estate agent prior to her injury, having been a member of the "Million Dollar Club" several times. Mrs. Weber testified that with the exception of one month during *321 which she was in intense physical therapy, she continued to go to her office to attempt to work. Because she was unable to dress herself, she did not dress well, nor did she feel well, and was apparently unable to stimulate business; she was unable to obtain contracts for listings, and unable to function properly because of the pain and the pain medication (she could drive only with one hand, which assertedly limited her activity as a salesperson). As elicited at trial:
Q. How would you explain to the jury why this injury of August 1, 1985 has caused you to have such a devastating lost [sic] of income?
A. Well, if you haven't written any contracts in five months, you don't reap any payment for five months. And then it is my attitude, I can't maintain a positive attitude. Well, it is hard to be cheerful and enthusiastic when you hurt all the time. This thing hurts some place (indicating).
Q. Have you tried to sell during this period?
A. Absolutely; I try all the time.
Q. You go everyday?
A. Everyday.
Q. Have you continued to go in for '86 and '87 everyday?
A. Yes.
The only evidence at trial relative to Mrs. Weber's income was her testimony and tax returns filed into evidence. Mrs. Weber was still employed as an agent at the time of trial, although (apparently) on a part-time basis inasmuch as she had begun to receive Social Security benefits.
In considering an award for Mrs. Weber's diminished earning capacity, the jury was not bound to award the precise pecuniary loss suffered by Mrs. Weber and, indeed, on the evidence presented, such determination would have been speculative. Loss of earning capacity permits the trier of fact more leeway, however, to consider other factors. For example, Mrs. Weber testified in the present case that she was obliged to take her social security benefits earlier than age 65 because her injury caused such a loss of income. On the other hand, it is far from clear from the record that Mrs. Weber's loss of income was due solely, or even mostly, to the accident in question.
Testimony elicited at trial revealed that Mrs. Weber was, in large part, a "builder's agent" and that Sam Romano, a builder, referred sales of his buildings almost exclusively to her; that he was her greatest source of income and that he went out of business during this same time period, and, therefore, she lost a great number of listings. This loss, with its concomitant loss of commissions for Mrs. Weber, had nothing to do with her accident, but were due rather to the coincidental business misfortune of the builder. Further, the only testimony of Mrs. Weber relative to her injury and loss of income, quoted hereinabove, does not establish a strong connection between the accident and the claimed loss of earning capacity.
We recognize that such loss of earning capacity cannot be calculated with mathematical certainty. See Philippe v. Browning Arms Co., 395 So.2d 310 (La.1981),
"The amount of damages awarded should, however, compensate plaintiff for the difference between his ability to earn immediately prior to the injury and his ability to earn after the injury." Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
We believe that the sum awarded by the jury meets the Coco criteria.
Therefore, while we do not find that the jury was clearly erroneous in awarding damages for a loss of earning capacity, we find that the evidence presented at trial does not prove any greater loss than that amount given at trial. Thus, we find no manifest error in this conclusion of the jury and we decline to disturb that portion of the judgment.

EXPERT FEES
As to the expert fee awarded by the court to Dr. Montz, plaintiff produced no testimony or evidence at trial as to Dr. Montz's fee. LSA-C.C.P. art. 1920 states in pertinent part:

*322 Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
The fixing of an amount of expert fees is a matter within the discretion of the trial court and, unless the record on appeal shows a serious abuse of this discretion, the appellate court will not disturb the finding of the trial court. Barnett v. Barnett Enterprises, Inc., 231 So.2d 589 (La.App. 4 Cir.1970); Laughlin v. Breaux, 515 So.2d 480 (La.App. 1 Cir.1987). We see no abuse of discretion in this fee, particularly in view of the fact that there is no evidence of record that the fee is inadequate. This portion of the judgment is affirmed.
For the foregoing reasons, the judgment of the trial court is revised to reflect that Buccola-McKenzie was negligent in the amount of 50% and Mrs. Weber was negligent in the amount of 50%. The judgment is in all other respects affirmed and recast and rendered as follows:
Judgment is rendered in favor of Patricia and Harrison Weber and against Buccola-McKenzie, Inc. and State Farm Insurance Company, jointly and insolido, in the sum of $110,000, as follows:

1) Past, present and future suffering,
 mental anguish, and
 disability: $75,000.00
2) Medical expenses 5,000.00
3) Past and future loss of earning
 capacity 30,000.00
 __________
TOTAL....................... $110,000.00

The award is subject to reduction of 50% based on our finding that Mrs. Weber was comparatively negligent in the amount of 50%; with legal interest from the date of judicial demand and all costs including expert fees of:

 Dr. John Montz $200.00
 Mr. Tilghman G. Chachere, Jr. $300.00

Appellant is taxed with all costs of this appeal.
REVISED IN PART, AFFIRMED IN PART, RECAST AND RENDERED.
NOTES
[1] LSA C.C. Art. 2315 states in pertinent part:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Art. 2316. Negligence, imprudence or want of skill
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.