636 So.2d 1112 (1994)
Priscilla JONES, Wife of Warren Edward Rome
v.
Wayne TRAILOR, et al.
No. 93-CA-2144.
Court of Appeal of Louisiana, Fourth Circuit.
April 28, 1994.
*1114 Ivan David Warner, III, Carimi Law Firm, Metairie, and Glenn E. Diaz, Chalmette, for plaintiff, appellee.
Salvador E. Gutierrez, Jr., Mary Ann Hand, Chalmette, for defendants, appellants.
Before BARRY, WARD and PLOTKIN, JJ.
*1115 PLOTKIN, Judge.
Defendants, St. Bernard Parish Sheriff Jack Stephens, Wayne Traylor, and Major Richard Baumy, appeal a trial court judgment awarding plaintiff Priscilla Rome $499,113.71 in damages for injuries she suffered as a result of a fall which occurred in the course and scope of her employment at the sheriff's office. We reverse the finding of liability against Major Baumy and amend the award. Otherwise, we affirm.

Facts
Ms. Rome, who was a corporal at the time of the accident, testified that she injured her back on September 8, 1987, when she tripped on a hole in a plastic Rubbermaid mat located in front of the console where she was working in the course and scope of her employment as a dispatcher in the radio room at the sheriff's office. She was treated for her injuries for a number of years and finally underwent two different surgical procedures. Named as defendants[1] in her suit, among others, was Sheriff Stephens, who was her employer, as well as her supervisors at the sheriff's departmentMajor Baumy, who had overall responsibility for the Communications Division in his capacity as commander of field operations, and Mr. Traylor, formerly a sergeant with the sheriff's office, who had direct supervisory authority over the radio room at the time of the accident in his capacity as commander of the communications division.
After a trial on the merits, the trial judge awarded Ms. Rome $499,113.71 in damages against the defendants. The defendants appeal, claiming that the following factual findings were manifestly erroneous: (1) that the mat created an unreasonable risk of harm, (2) that the plaintiff's injuries were caused by the fall, and (3) that the plaintiff was not comparatively negligent because she acted with only "very slight fault," which was therefore "excusable." The defendants also claim that the damages are excessive. Finally, the defendants claim that the trial judge committed legal error in holding Mr. Traylor and Major Baumy liable for the plaintiff's accident.

1. Alleged factual errors

The defendants allege that the trial judge made the three factual errors enumerated above.
The following general tort principles are generally applicable to the determination of whether the trial court correctly found the defendants liable for the plaintiff's injuries because of their negligence[2]:
(1) Actionable negligence results from the creation or maintenance of an unreasonable risk of harm to others.
(2) Statutory violations may be guidelines for the court in determining standards of negligence by which civil liability is determined, although they are not in and of themselves definitive of civil liability.
(3) Contributory [comparative] negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection. The standard of conduct to which the plaintiff must conform for his own protection is that of a reasonable man under like circumstances.
(4) Failure to take every precaution against every foreseeable risk or to use extraordinary skill, caution and foresight does not constitute negligence or contributory [comparative] negligence.
Batiste v. Robillard, 401 So.2d 1267, 1269-70 (La.App. 1st Cir.1981), citing Smolinski v. Taulli, 276 So.2d 286 (La.1973) and Galliano v. Lirette, 339 So.2d 378 (La.App. 1st Cir. *1116 1976), writ denied, 341 So.2d 416 (La.1977). (Emphasis in original.)

a. Unreasonable risk of harm

First, the defendants claim that the trial judge improperly found that the mat in question posed an unreasonable risk of harm. An employer's duty to provide his employees with a safe place to work is governed by the following statutory guideline, found at LSA-R.S. 23:13:
Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees....
Thus, in order for the plaintiff to recover from her employer, she must prove, among other things, that her accident and injuries were caused by an unreasonable risk of harm created by the employer's failure to properly fulfill the duties imposed by the above statute.
In this case, the plaintiff presented the testimony of a number of her fellow dispatchers in the radio room, all of whom stated that the plastic mat in question had cracked and that a hole had developed in the mat prior to Ms. Rome's fall. Other than the plaintiff, Elda Trapani, Earlin Alphonso, and Greg Mandola all testified to this fact. Further, all four dispatchers testified that other people had tripped on the hole prior to plaintiff's fall, although no one had been injured prior to that time.
Further, the testimony indicates that the hole was located in an area of the mat which formed the normal passageway between the two consoles which the dispatchers used in performing their duties. Normally, two dispatchers worked in the radio room at any given timeone dispatcher on "Console One," which was on the left, and one dispatcher on "Console Two," which was on the right. The testimony indicated that the hole was located in the mat in front of Console One, slightly to the right. The time clock was located beside Console One.
When dispatching sheriff's deputies in response to various calls, the radio room employees were required to punch the time clock at various stages as investigations progressed. Normally, the dispatcher who was working Console One contacted and communicated with the deputies responding to calls; under those circumstances, the time clock was located adjacent to the work area of the dispatcher who was required to use it. However, when one of the dispatchers was absent from the room for any reason, as was the case when Ms. Rome fell, the remaining dispatcher was required to move back and forth between the consoles with some degree of haste.
Ms. Rome stated that she had just moved from Console Two, where she had been working, to punch the time clock beside Console One to document the time a call had come in, and was returning to Console Two to retrieve her notebook, her pen, and her cigarettes, when the fall occurred. She stated that she had intended to wait at Console One for the unit to inform her that it had arrived on the scene in answer to the call, at which time she would need to punch the time clock again, and that she needed all of her "things" at Console One during the undetermined amount of time she would be working there until the other dispatcher returned.
Considering the above record evidence, we find no manifest error in the trial judge's conclusion that the mat in question presented an unreasonable risk of harm. The question of slip and fall accidents caused by rugs or mats has been considered several times by Louisiana courts. See Weber v. Buccola-McKenzie, Inc., 541 So.2d 315 (La.App. 5th Cir.1989), which collects the cases. That opinion held that a mat which causes a person to fall despite the fact that the person is wearing low-heeled shoes and is not physically or visually impaired is not reasonably safe. Id. Considering the facts of the instant case in light of the Weber case and the cases cited therein, we find the evidence *1117 sufficient to support the trial judge's conclusion that the sheriff's office failed in its duty to do everything "reasonably necessary to protect the life, health, safety and welfare" of its employees, as required by the statute.

b. Causation

Second, the defendants claim that the trial judge committed manifest error in finding that Ms. Rome's injuries were caused by the September 8, 1987 trip and fall on the mat in the radio room. This assignment of error is grounded primarily in two arguments: (1) Dr. Kenneth Vogel's conclusion that the plaintiff's back injury was caused by the September 8, 1987 fall at the sheriff's office was based on incomplete medical history given to Dr. Vogel by the plaintiff, and (2) the trial court improperly failed to apply the presumption that the plaintiff's treating physicians for the four years immediately following the accident, who were not called to testify, would have testified adverse to the plaintiff's position.
In his written reasons for judgment, the trial judge specifically found that Ms. Rome had met her burden of proving causation, stating as follows:
The court finds the evidence sufficient to prove that Mrs. Rome's injuries are causally related to the September 8, 1987 accident. The testimony showed that Mrs. Rome was healthy before the accident. She did sustain a minor back injury in 1982, but the Court finds this injury to have resolved itself before the 1987 accident. The evidence shows that her complaints and subsequent surgeries ... are the direct result of the accident on September 8, 1987.

(1) Incomplete medical history

The defendant first claims that the plaintiff failed to carry her burden of proving causation because Dr. Vogel's opinion that Ms. Rome's back injuries were caused by the fall at the sheriff's office was based on incomplete medical history supplied by the plaintiff. Specifically, the defendant claims that the plaintiff failed to tell Dr. Vogel about two 1982 incidents, after which she was hospitalized for acute lumbar strain, among other things. Ms. Rome admitted during her testimony that she pulled a muscle in her back in 1982, then about a week later, hurt her back again in a motor vehicle accident. Dr. Vogel stated that Ms. Rome told him during his initial evaluation on June 27, 1991 that she had suffered no previous injuries other than a pulled muscle 10 years before.
We find no merit in the defendant's arguments on this issue. First, the plaintiff told Dr. Vogel that she had suffered a pulled muscle 10 years prior to his initial evaluation; that "pulled muscle" could well have been the acute lumbar strain suffered in 1982, which was nine years prior to the evaluation. Further, on cross-examination, Dr. Vogel was specifically informed of all the plaintiff's previous injuries to her back by way of a hypothetical question, and still opined unequivocally that Ms. Rome's pain was causally related to the fall in "all medical probability." Thus, any effect from Ms. Rome's alleged failure to provide Dr. Vogel with a complete medical history was cured.

(2) Adverse presumption

The defendant also claims that the trial judge improperly found that the plaintiff had carried her burden of proof because he failed to apply the adverse presumption arising from failure to call a treating physician.
In the instant case, only two doctors testified Dr. Vogel, who first saw the plaintiff on June 27, 1991, almost four years after the accident, and Dr. Robert L. Shackleton, who first saw the plaintiff on November 6, 1991 and saw her only for purposes of performing a fusion during her second back surgery. The plaintiff testified that immediately after the accident, she was treated in the emergency room, then in the physical therapy department, at De La Ronde Hospital. Then, she consulted a Dr. Murphy for three or four months. Thereafter, she saw a Dr. Cracco, who treated her injuries for some two years, from March of 1988 until sometime in 1990. None of these treating physicians were called to testify at trial.
Generally, when a party fails to produce a witness who is available to him and gives no reasonable explanation for the failure, *1118 a presumption arises that the witness' testimony would have been adverse to the party. Williams v. General Motors Corp., 639 So.2d 275 (La.App. 4th Cir.1994). This adverse presumption has been specifically applied in cases where a plaintiff fails to call his treating physician. Guillot v. Miller, 580 So.2d 1104 (La.App. 4th Cir.1991); Bush v. Winn-Dixie of Louisiana, Inc., 573 So.2d 508 (La.App. 4th Cir.1990), writ denied, 578 So.2d 930 (La.1991).
The plaintiff argues that the presumption should not be applied in this case because it applies only when the failure to call a missing witness is unexplained; she attempts to explain her failure to call Dr. Murphy and Dr. Cracco through statements made in brief to this court. However, those explanations are not in the trial court record of this case. Further, we do not find the statements adequate to excuse Ms. Rome's failure to call the only medical witnesses who could have testified concerning her condition during the four years immediately after the accident. Thus, we believe that the adverse presumption should be applied when considering the evidence presented in this case.

(3) Preponderance of the evidence

Although we find that the adverse presumption should have been applied against the plaintiff, the causation inquiry does not stop there. Even though this court can reasonably presume that the testimony of the two treating physicians who were not called by the plaintiff would have been adverse to the plaintiff's position, that presumption in and of itself does not compel this court to reverse the trial judge's decision on causation. In order to determine whether the decision should be reversed, we must consider whether the record evidence was sufficient to support the trial judge's conclusion that the plaintiff proved by a preponderance of the evidence that her September 8, 1987 fall in the radio room caused her back injuries.
A plaintiff has met the burden of proving causation by a preponderance of the evidence when "the entirety of the evidence, both direct and circumstantial, establishes that the ... causation sought to be proved is more probable than not." Cay v. State, DOTD, 631 So.2d 393, 395 (La.1994). When the evidence is circumstantial, the plaintiff is required to "present evidence of circumstances surrounding the incident from which the factfinder may reasonably conclude that the particular defendant's negligence caused the plaintiff's injuries." Id.
In the instant case, the plaintiff testified that she had previously suffered a minor back injury resulting from the combination of lifting something at work and an automobile accident in 1982. This injury, which was diagnosed as an "acute lumbar strain," is documented in De La Ronde Hospital records. However, plaintiff claims that the 1982 injury resolved itself in a matter of weeks and that she never suffered any more back problems until immediately after the accident in question. This testimony is corroborated by the fact that records from Chalmette Medical Center, which document treatments on several occasions between 1982 and 1987, do not mention any back injuries whatsoever. Further, the plaintiff testified that she underwent a physical examination when she was hired by the sheriff's office in 1983 and that she was required to complete vigorous physical deputy training every year from that date until the time of the accident. Ms. Rome testified that she went to a chiropractor because her legs bothered her in 1985, but denied any further problems with her back prior to the accident.
Additionally, both the report prepared by the emergency medical technician and the report of occupational injury prepared by the sheriff's department on the night of her fall indicate that Ms. Rome complained of back pain immediately after the accident. The evidence is also uncontradicted that Ms. Rome never returned to work after the fall on the mat.
The standard for determining causation in a personal injury case has been described as follows:
In a personal injury suit the test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved through *1119 medical testimony that it was more probable than not that subsequent injuries were caused by trauma suffered in the accident. A plaintiff is aided in establishing this burden by the legal presumption that medical condition producing disability is presumed to have resulted from an accident, if, before the accident, the injured person was in good health, but shortly after the accident, the disabling condition manifested itself.
If such a showing is made, the burden is upon a defendant who contests the cause-in-fact relationship to show some other particular incident could have caused the injury in question to overcome plaintiff's case.
Streeter v. Sears, Roebuck & Co., Inc., 533 So.2d 54 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1255 (La.1989).
We find that the plaintiff in this case is entitled to the benefit of the presumption described above. Ms. Rome proved, by a preponderance of all the evidence, that her back was in "good health" prior to the accident, but that the disabling condition, the disc injury, manifested itself immediately after the accident. Thus, we find that the trial judge was not manifestly erroneous in concluding that Ms. Rome proved by a preponderance of the evidence that her back injuries were caused by the trip and fall on the mat at the sheriff's office.

c. Comparative negligence

The third alleged factual error assigned by the defendants is that the trial judge was manifestly erroneous in assigning no comparative negligence to the plaintiff, a decision which was based on the trial judge's finding that Ms. Rome acted with only "very slight fault," which was therefore excusable. In support of this argument, the defendants claim that the evidence presented at trial indicates that the "[p]laintiff was solely at fault in causing her own injuries by failing to look and watch where she was walking," since the plaintiff knew about the condition of the mat.
In his written reasons for judgment on this issue, the trial judge stated as follows:
To determine whether any fault should be attributed to Mrs. Rome, the Court has followed the guidelines set out in Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985). These include (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether supervisor or inferior and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
The court is of the opinion that Mrs. Rome's actions are excusable. The Court finds that Mrs. Rome acted with what is termed "very slight fault." La.Civ.Code Art. 3506(13) described the three degrees of fault in the following manner:
"The gross fault is that which proceeds from inexcusable negligence or ignorance; it is considered as nearly equal to fraud.
The slight fault is that want of care which a prudent man usually takes of his business.
The very slight fault is that which is excusable, and for which no responsibility is incurred."
Even though she knew of the existence of the hole, she testified that due to the nature of her position, she often acted in haste without thinking about the hole. The other dispatchers who testified also stated that they too had to act quickly and would not have the time to think about the presence of the hole. Dispatchers are encouraged to act promptly and without hesitation. Both patrol officers and private citizens depend on their ability to respond promptly. To require a dispatcher to proceed with caution would only disrupt the operations of the entire law enforcement branch.
We find no manifest error in the trial court's findings on this issue as explained by the reasons stated above. Thus, we adopt those findings as our own.

*1120 2. Quantum

The trial judge made the following awards to the plaintiff:

General Damages $300,000.00
Medical Expenses 77,971.56
Past Wages 61,875.15
Future Wages 57,267.00
Future Medical 2,000.00
 ___________
TOTAL $499,113.71

The defendant challenges the trial judge's awards for past and future medical expenses, as well as his awards for past and future wages.

a. Medical expenses

The defendants claim that both the $77,971.56 past medical expenses award and the $2,000 future medical expenses award are excessive.

(1) Past medical expenses

The defendants' primary challenge to the trial judge's $77,971.56 award for past medical expenses is based on their contention that many of the medical bills supporting that award were improperly admitted by the trial court under the rules announced by this court in Austin v. Pascarelli, 612 So.2d 201, 210 (La.App. 4th Cir.1992), writs denied, 614 So.2d 1256 and 1257 (La.1993). In Austin, we found that medical bills had been improperly admitted over a hearsay objection under the then-new Louisiana Code of Evidence because the plaintiff failed to lay a proper foundation for admission of the bills under the business record exception to the hearsay rule, since the plaintiff failed to present the testimony of the custodian of the records or "other qualified witness" to support the admissibility of the bills.
The plaintiff claims that the trial court properly admitted the medical bills despite the language of the Austin case. Noting first that the comment to La.C.E. art. 802, which defines hearsay, state that that provision "does not substantially change Louisiana law," the plaintiff claims that she met the requirements for admission of the medical bills to prove the cost of medical treatments as stated in the pre-Louisiana Code of Evidence case of Guillory v. Shelter Mutual Insurance Co., 542 So.2d 850 (La.App. 3d Cir.1989). The plaintiff also notes that the Austin case assumes "Guillory is still good law," and bases its decision at least partially on the fact that the plaintiff in Austin did not even meet the requirements of Guillory.
The same is true of the instant case. In Guillory, medical bills were admitted over two different objections from the defendants. First, the appellate court rejected the defendant's claim that the plaintiff failed to lay a proper foundation for admission of the bills, saying that the plaintiff's testimony concerning the events surrounding her accident and her actions seeking treatment to resolve her injuries, coupled with her identification of each medical bill by date, amount, and physician or hospital, was sufficient to lay a foundation for the admission of the bills. Second, the appellate court rejected the defendant's contention that the medical bills were hearsay, finding that the plaintiff's testimony, coupled with the deposition testimony of one treating physician, who described the treatment associated with each medical bill, was sufficient to overcome the hearsay objection.
In the instant case, no doctor testified about the treatment in regard to many of the medical bills presented by the plaintiff. Thus, the admission of those bills did not even meet the requirements of the Guillory case for overcoming the defendants' hearsay objection. Further, many of the alleged treating physicians, whose bills were presented at trial, were not even mentioned in the plaintiff's own description of her medical treatment. For these reasons, the trial judge improperly awarded plaintiff the following amounts for the medical bills indicated:

R.H. Morse, M.D. $ 135.00
Alain F. Cracco, M.D. 1,035.00
Landry-Albright Radiology Group,
Inc. 1,583.00
Travis J. Harrison, M.D. 270.00
Albert S. Johnson, M.D. 100.00
Drs. Iteld & Mautner 50.00
Chalmette Medical Centers 1,569.00
Chalmette Medical Centers (De La
Ronde) 5,924.89
 __________
TOTAL $10,666.89[3]
*1121 According, the trial court's award for past medical expenses is reduced by $10,666.89 from $77,971.56 to $67,304.67.

(2) Future medical expenses

The trial judge also awarded the plaintiff $2,000 in future medical expenses, which the defendants claim was excessive. However, we find this award is supported by the record. Dr. Vogel testified that he had not yet released the plaintiff at the time of trial and that the plaintiff would continue to need some treatments. Although Dr. Vogel was unable to give an estimate of the cost of the necessary future treatment, the trial judge is vested with great discretion in the award of damages in cases such as this. The standard for award of future medical expenses in the absence of evidence concerning the cost of such expenses has been described as follows:
When the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1262 (La.1993), cert. denied, Maritime Overseas Corp. v. Youn, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), quoting Stiles v. K Mart Corp., 597 So.2d 1012, 1013 (La.1992). Under the circumstances, the record supports the trial judge's award of $2,000 in future medical expenses.

b. Lost wages

The defendants challenge both the trial judge's award of $61,875.15 for past lost wages and the award of $57,267 for future lost wages.

(1) Past lost wages

Although the defendants challenge the trial judge's award for past lost wages, their brief is devoted almost entirely to discussion of the plaintiff's alleged failure to prove future lost wages. Concerning past lost wages, they only cite Champagne v. Lee, 470 So.2d 378 (La.App. 5th Cir.), writ not considered, 472 So.2d 911 (La.1985) for the proposition that a plaintiff has the burden of showing both that she was absent from work and that the absences were caused by the work-related injury or accident. Id. at 382.
We find no manifest error in the trial court's conclusion that the plaintiff in this case carried her burden of proving that her absences from work were caused by the fall in the sheriff's office. Unquestionably, Ms. Rome never returned to work between the accident and her discharge from the sheriff's office for excessive absences in December of 1987. Additionally, Ms. Rome testified that she was unable to perform her responsibilities at the sheriff's office from the time of the accident at least until the time of trial, when she was still recovering from the two surgical procedures performed to improve her back problem. Further, Ms. Rome testified that she suffered so much pain during that period that she would have been unable to work elsewhere. This uncontroverted testimony was sufficient to prove that Ms. Rome missed work because of the injuries she sustained in the accident.
The defendants do not attack the amount of damages awarded the plaintiff for past lost wages, relying instead on their argument that she failed to prove entitlement to any past lost wages. However, we note that the record supports the $61,875.15 award for past lost wages. Ms. Rome testified that her salary was $1,045 per month at the time of her termination in December of 1987. At the time of trial in November of 1992, Ms. Rome had been unemployed for 59 months. Thus, the amount of plaintiff's lost wages, even without considering any raises, promotions, or other possible increases in salary, totalled $61,655. Although the trial *1122 court's award is $220 more than that amount, it is not manifestly erroneous.

(2) Future lost wages

The defendants also contend that the trial court improperly awarded the plaintiff $57,267 for future lost wages. They claim that the plaintiff failed to meet her burden of proving entitlement to future lost wages because she failed to present the testimony of either an economic expert or a vocational counselor, as required by this court in Naman v. Schmidt, 541 So.2d 265 (La.App. 4th Cir.1989).
We agree with the defendants' contention on this issue. Ms. Rome testified that she was unable to perform any work activities at the time of trial. Further, Dr. Vogel assigned the plaintiff a 25 percent permanent partial anatomical impairment. He stated that she should not lift, push, or pull more than 25 pounds at a time for the rest of her life. Additionally, Dr. Shackleton said that the plaintiff would be permanently prohibited from engaging in any repetitive bending, stooping, crawling, or climbing, that she should not lift more than 25 to 35 pounds at one time, and that she should not perform repetitive lifting of more than 10 to 15 pounds. However, Dr. Shackleton also stated specifically that "sitting should not be a problem" for the plaintiff.
Nothing in the testimony detailed above provides a basis to allow either the trial court or this court to determine whether the plaintiff suffered a loss of future earning capacity because of the fall on the mat in the sheriff's office. Although the testimony of the physicians was sufficient to establish that the plaintiff would suffer some physical restrictions in her future activities, proof of those limitations is insufficient to show that the plaintiff is unable to engage in any employment, or to show the limitations on the plaintiff's ability to earn a salary in some type of occupation. Only the testimony of a vocational counselor would have been sufficient to prove the types of employment, if any, the plaintiff could undertake and the amount of money she might earn in those types of employ. Even Dr. Vogel stated specifically that he would defer to a vocational counselor on this issue. The plaintiff failed to present the necessary testimony to meet her burden of proving loss of future wages.
Further, even if the plaintiff had presented evidence that she was unable to engage in any employment or that her salary would be limited to a certain amount because of her physical restrictions, her failure to present the testimony of an economic expert made it virtually impossible for the trial court or this court to estimate the proper recovery for the plaintiff. Only an economic expert would be able to explain the proper discount rate and thereby calculate the proper amount of damages to compensate the plaintiff for loss of future wages.
Accordingly, we find that the trial court was manifestly erroneous in awarding the plaintiff $57,267 for loss of future wages. The judgment is hereby amended to delete that award.

3. Liability of supervisory employees

Finally, the defendants claim that the trial court committed legal error in holding Major Baumy and Mr. Traylor liable for the plaintiff's damages.
As previously noted, liability of an employer for injuries to his employees is governed by LSA-R.S. 23:13, which, among other things, imposes a duty on an employer to do everything "reasonably necessary to protect the life, health, safety and welfare of [his] employees." The defendants claim that Sheriff Stephens was the only one who could be considered Ms. Rome's "employer" and thus was the only one who could be held liable for violation of the duty imposed by the above statute.
Determination of this issue is governed by principles established in pre-1976 cases dealing with "executive officer" liability.[4] The *1123 criteria for "executive officer" liability were established by the Louisiana Supreme Court in Canter v. Koehring Co., 283 So.2d 716 (La.1973). Those criteria were summarized as follows in Batiste, 401 So.2d at 1269:
1. The principal or employer owes a duty of care to the third person ..., breach of which caused the damage for which recovery is sought.
2. This duty is delegated by the principal or employer to the defendant.
3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstanceswhether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance [or] malperformance and has nevertheless failed to cure the risk of harm.
We have previously determined that the first element of the above inquiry is present in the instant case, since the sheriff's office owed Ms. Rome a duty of care, the breach of which caused her injuries. Thus, we will consider whether the trial judge properly concluded that Major Baumy and Mr. Traylor were liable for the plaintiff's injuries by considering the other three factors in regard to those two defendants.

a. Major Baumy's liability

Major Baumy testified that he served as commander of field operations for the St. Bernard Parish Sheriff's Office at the time of the accident. As a part of his duties, Major Baumy had overall responsibility for operations of the communications division, among others. Since the radio room was a part of the communications division, Major Baumy had general responsibility for that area. However, responsibility for day-to-day operations in the radio room had been delegated to Mr. Traylor, who was a sergeant and commander of communications at the time of the accident. Mr. Traylor had responsibility for reporting equipment problems to Major Baumy, and therefore should have either reported that the mat was developing a hole or removed the mat that was causing the problem, Major Baumy stated. Major Baumy said that he had never inspected the mats in the radio room, and that no one had ever reported any problems with the mats to him personally. This testimony was corroborated by other evidence presented at trial, since none of the witnesses claimed to have reported the problem with the mat to Major Baumy.
Under the record evidence in this case, we find that the trial judge improperly imposed liability on Major Baumy. Although the duty to provide a safe work place in the radio room had been delegated to him by the sheriff's office, the breach of that duty occurred only because of Major Baumy's technical or vicarious fault, not because of any personal fault on his part; thus, the third requirement outlined above for imposing executive officer liability is not fulfilled regarding Major Baumy. Further, the fourth of the above requirements is also not fulfilled since Major Baumy's general responsibility had been delegated to Mr. Traylor, and nothing in the record indicates that such assignment was *1124 not made with due care. Finally, nothing in the record indicates that Major Baumy either knew or should have known of the dangerous condition of the mats in the radio room. Accordingly, the trial court judgment imposing liability on Major Baumy is hereby reversed.

b. Mr. Traylor's liability

Mr. Traylor admitted during his testimony that he supervised the day-to-day operations of the communications department, including the activities in the radio room, at the time of Ms. Rome's fall, as a part of his duties as commander of communications. Although he noticed the cracks in the mats in the radio room in 1987, he did nothing, Traylor said, because he believed that the cracks did not affect the surface of the mat. Further, he said that he preferred that his employees report problems to him before going over his head to Major Baumy, if he was available. Mr. Traylor said that he did not recall anyone complaining about the mats prior to Ms. Rome's fall.
However, all the radio room dispatchers who testified at trial stated that they had complained to Mr. Traylor about the dangerous condition of the mat numerous times prior to Ms. Rome's fall. Further, the testimony of these employees indicated unequivocally that Mr. Traylor had previously reprimanded people for removing things; therefore, "nobody touched anything in the radio room," according to Ms. Trapani. The employees said that Mr. Traylor told them prior to the plaintiff's fall that he would "take care of the problems" with the mats.
Considering this evidence, we find that the trial court received sufficient evidence to support the trial court's conclusion that Mr. Traylor was liable for the plaintiff's injuries under the criteria for executive officer liability outlined above. The duty to provide a safe work place had been delegated to Mr. Traylor by the sheriff's office and Major Baumy, and that duty was breached, which caused Ms. Rome's fall. Mr. Traylor was at fault by failing to remove the mats after employees complained about the dangerous condition. Thus, the second and third criteria of Canter are fulfilled. Further, Mr. Traylor had more than a general administrative responsibility regarding the safety of the radio room; he was directly responsible for the day-to-day operations. Finally, Mr. Traylor knew about the condition of the mats because his employees had told him about the problem, fulfilling all the requirements of the fourth criteria for executive officer liability. Accordingly, the trial court judgment holding Mr. Traylor liable for Ms. Rome's injuries is affirmed.

4. Conclusion

The trial court judgment in favor of Ms. Rome is amended to award the following amounts:

General damages $300,000.00
Past medical expenses 67,304.67
Future medical expenses 2,000.00
Past wages 61,875.15
 ___________
TOTAL $431,179.82

The trial court judgment against Major Baumy is reversed. In all other respects, the trial court judgment is affirmed.
REVERSED IN PART; AMENDED; AS AMENDED, AFFIRMED IN PART.
NOTES
[1] Under the provisions of LSA-R.S. 23:1034(B), sheriffs' deputies are exempted from the exclusivity of the worker's compensation statutes, which would normally prohibit a plaintiff from filing suit in tort for work-related injuries against an employer.
[2] The defendants complain that the trial judge inappropriately held them both negligently and strictly liable for the plaintiff's damages in his oral reasons for judgment. They claim that holding them strictly liable was inappropriate because the plaintiff never alleged strict liability. However, since we find that the trial judge properly held the defendants negligently liable, we do not consider whether the plaintiff also proved strict liability.
[3] The defendants also contest the award of $33,518.67 for a medical bill prepared by Mercy Hospital of New Orleans, which is dated December 18, 1991. However, since both Dr. Vogel and Dr. Shackleton testified concerning plaintiff's discectomy and fusion performed during December of 1991, we find that this bill was properly admitted under the Guillory case.
[4] Since its adoption in 1976, LSA-R.S. 23:1032 has prohibited suits against employers, as well as suits against executive officers and supervisory employees of employers, limiting recovery against employers and their agents to worker's compensation, when the worker's compensation laws apply. However, since sheriff's office employees are exempt for the exclusivity of worker's compensation laws, the cases interpreting the prior law govern this case.